**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-2141**

LAKENISHA DOWLING,

Plaintiff - Appellant,

v.

COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,

Defendant - Appellee.

Appeal from the United States District Court for the District of South Carolina, at Orangeburg.  Mary G. Lewis, District Judge.  (5:18-cv-00387-MGL)

Argued:  December 9, 2020                          Decided:  January 21, 2021

Before KING, FLOYD, and THACKER, Circuit Judges.

Reversed and remanded by published opinion.  Judge Thacker wrote the opinion, in which Judge King and Judge Floyd concurred.

**ARGUED:**  William Daniel Mayes, SMITH, MASSEY, BRODIE, GUYNN & MAYES, P.A., Aiken, South Carolina, for Appellant.  Brittany Johanna Gigliotti, SOCIAL SECURITY ADMINISTRATION, Philadelphia, Pennsylvania, for Appellee.  **ON BRIEF:**  Brian C. O'Donnell, Acting Regional Chief Counsel, Edward Tompsett, Acting Supervisory Attorney, Office of the General Counsel, SOCIAL SECURITY ADMINISTRATION, Philadelphia, Pennsylvania; A. Lance Crick, Acting United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greenville, South Carolina, for Appellee.

THACKER, Circuit Judge:

On February 10, 2011, the Social Security Administration ("SSA") Office of Disability Adjudication and Review determined that Lakenisha Dowling ("Appellant") had been disabled since April 15, 2009. However, on November 3, 2016, an administrative law judge ("ALJ") found that Appellant's disability had ceased as of March 31, 2013. Appellant challenged the ALJ's decision in the United States District Court for the District of South Carolina pursuant to 42 U.S.C. § 405(g).[1] The district court affirmed the decision of the ALJ, and this appeal followed.

The ALJ committed two legal errors. First, the ALJ erred by failing to consider each of the factors listed in 20 C.F.R. § 404.1527(c) before affording only negligible weight to the medical opinion of one of Appellant's treating physicians. Second, the ALJ erred by assessing Appellant's residual functional capacity ("RFC") pursuant to an incorrect framework and without explaining his RFC-related findings in the manner required by Social Security regulations. Accordingly, we reverse the district court's order affirming the decision of the ALJ, and remand for further administrative proceedings consistent with this opinion.

---

[1] 42 U.S.C. § 405(g) provides, "Any individual, after any final decision of the Commissioner of Social Security . . . may obtain a review of such decision by a civil action commenced . . . . in the district court of the United States for the judicial district in which the plaintiff resides . . . ."

I.

A.

Appellant is 42 years old and resides in South Carolina with her mother and 18 year old daughter. She suffers from a multitude of health problems, the most serious of which relate to her gastrointestinal system. She has lived with inflammatory bowel disease ("IBD") since 1998 and has been diagnosed with both ulcerative colitis and Crohn's disease.[2] Appellant's IBD causes her to experience diarrhea, abdominal pain, fatigue, body aches, and cramping. In addition, Appellant has a small hole in the skin near her anus, which has been diagnosed as an anal fissure, a perianal fistula, and a pilonidal sinus.[3] The fissure routinely leaks and bleeds, and it causes Appellant discomfort when sitting. Appellant also suffers from numerous non-gastrointestinal health problems, including thyroid cancer, obesity, anxiety, anemia, arthritis of the right ankle, and migraine headaches.

Appellant graduated from high school and attended a technical college in Orangeburg, South Carolina, where she became a certified nursing assistant. After receiving this education, Appellant began working full-time in the healthcare sector. She spent six months as a nursing assistant in 2003, followed by nearly seven years as a dialysis

---

[2] Although we recognize that ulcerative colitis and Crohn's disease are distinct forms of inflammatory bowel disease, we will refer to these ailments collectively as "IBD."

[3] Again recognizing these are different afflictions, for simplicity's sake, we will refer to the hole in Appellant's skin as an "anal fissure."

technician. Then, in 2009, Appellant began work as a monitor technician at the Regional Medical Center in Orangeburg. Her primary duty as a monitor technician was to enter the doctors' orders and comments into the hospital's computer system. However, Appellant left that job after only "a couple of months" because she "kept getting sick." A.R. 140.[4] After leaving this job, Appellant did not work again until the spring of 2015, when she began working one day a week as a home health aide for an elderly woman who lives near her.

B.

On May 6, 2009, shortly after leaving her job as a monitor technician, Appellant filed an application for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401–433. In her application, Appellant claimed she had been "unable to work because of [her] disabling condition" since April 15, 2009. A.R. 274. On February 10, 2011, the SSA Office of Disability Adjudication and Review issued a fully favorable decision to Appellant, in which it found that Appellant suffered from "irritable bowel syndrome, aplastic anemia, arthritis of the right ankle, general anxiety disorder and affective disorder," and concluded that she had been disabled since April 15, 2009. *Id.* at 175. However, the SSA decision also noted that Appellant's medical condition was expected to improve "with appropriate treatment" and recommended that her case be reviewed again in 12 months. *Id.* at 178. When the SSA next reviewed Appellant's case

---

[4] Citations to the "A.R." refer to the Administrative Record filed in this appeal, which has been certified as accurate by the Office of Appellate Operations of the SSA.

4

on March 8, 2013, it found that that her condition had indeed improved and stabilized with medication, and concluded that Appellant was "no longer disabled." *Id.* at 184. As a result, Appellant's disability benefits terminated in May 2013.

Appellant challenged the SSA's decision to discontinue her disability benefits and requested a hearing before an ALJ. At that hearing, which took place on February 2, 2016, Appellant testified about the activities and tasks she was physically capable of completing, which included driving and riding in a car, cleaning her house, going to the grocery store, putting on clothes, using the bathroom, preparing meals, and doing dishes. She also testified about her job as a home health aide, her medical problems and how they impacted her life, and the medications she took and how they affected her. A vocational expert also appeared at the hearing and testified about the nature of Appellant's past jobs and the amount of physical exertion required to adequately perform them.

On November 3, 2016, the ALJ agreed with the initial SSA decision that Appellant's disability had ended on March 31, 2013. The ALJ first noted that while Appellant continued to suffer from severe medical impairments, her overall medical condition had significantly improved between February 10, 2011, the day that she was originally determined to be disabled, and March 31, 2013. The ALJ found that, because of her medical improvement, Appellant possessed the RFC to perform sedentary work,[5] but not

---

[5] 20 C.F.R. § 404.1567(a) defines sedentary work as that which "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." Additionally, that section provides, "Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often

5

work that required: (1) "lifting or carrying of more than 10 pounds . . . or lifting or carrying of less than 10 pounds more than frequently"; (2) "walking in combination for more than a total of 2 hours in an 8 hour workday"; or (3) "more than occasional stooping, balancing, crouching, kneeling, or climbing stairs or ramps." J.A. 11.[6] In the ALJ's view, Appellant's past work did not require her to engage in any of those activities. Therefore, the ALJ concluded that Appellant's disability had ended. In reaching this conclusion, the ALJ afforded only "negligible weight" to the medical opinion of Dr. Rachael Gross, one of Appellant's treating physicians. J.A. 16.

Per Appellant's request, the SSA Office of Disability Adjudication and Review reviewed the ALJ's decision on December 7, 2017, but found no basis for changing it. At that point, the ALJ's decision became "the final decision of the Commissioner of Social Security in [this] case." A.R. 1. Appellant then challenged the ALJ's decision in the United States District Court for the District of South Carolina, which affirmed, finding the ALJ's decision to be supported by substantial evidence. The ALJ's decision is now before this court. We hold that it must be reversed.

II.

We review the ALJ's Social Security disability determination pursuant to the standard set out in 42 U.S.C. § 405(g). We must uphold the ALJ's decision if the ALJ

---

necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." *Id.*

[6] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

"applied correct legal standards" and if the "factual findings are supported by substantial evidence." *Bird v. Comm'r of SSA*, 699 F.3d 337, 340 (4th Cir. 2012) (citing 42 U.S.C. § 405(g)). "Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015) (internal quotation marks omitted). Though the "threshold for such evidentiary sufficiency is not high," it requires that "more than a mere scintilla" of evidence support the ALJ's findings. *Shinaberry v. Saul*, 952 F.3d 113, 120 (4th Cir. 2020). In undertaking this review, it is not our place to "re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ]." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). However, "we do not reflexively rubber-stamp an ALJ's findings." *Lewis v. Berryhill*, 858 F.3d 858, 870 (4th Cir. 2017).

## III.

### A.

#### Regulatory Procedure

SSA regulations establish an eight-step procedure for determining whether a recipient of disability insurance benefits continues to be disabled. *See* 20 C.F.R. § 404.1594(f)(1)–(8). Those steps are as follows: (1) Is the claimant engaging in substantial gainful activity? If yes, the disability has ended. If no, proceed to step two. (2) Does the claimant have an impairment or combination of impairments which meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If yes, the disability continues. If no, proceed to step three. (3) Has there been medical improvement as shown by a decrease in the medical severity of the impairment(s) that existed at the time

7

of the most recent favorable disability decision?  If yes, proceed to step four.  If no, proceed to step five.  (4) Is the medical improvement related to the ability to work, i.e., has there been an increase in the claimant's RFC?  If yes, proceed to step six.  If no, proceed to step five.  (5) Do any of the exceptions set out in 20 C.F.R. § 404.1594(d) or (e) apply?  If none of them apply, the claimant's disability continues.  If one of the first group of exceptions to medical improvement applies, proceed to step six.  If one of the second group of exceptions to medical improvement applies, the claimant's disability has ended.  (6) Is the claimant's current impairment or combination of impairments severe?  If yes, proceed to step seven.  If no, the disability has ended.  (7) Does the claimant possess the RFC to perform her past relevant work?  If yes, the disability has ended.  If no, proceed to step eight.  (8) Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow the claimant to do other work?  If yes, the disability has ended.  If no, the disability continues.  *See id.*

In this case, Appellant's continuing eligibility for disability benefits boiled down to steps seven and eight: the assessment of whether, despite her severe impairments, she possessed the RFC to perform work she had done in the past.  The ALJ found that, as of March 31, 2013, Appellant possessed an RFC "to perform sedentary work," J.A. 11, which rendered her "capable of performing past relevant work," *id.* at 18.  Accordingly, the ALJ determined that Appellant ceased to be disabled as of that date.

B.

Medical Opinion Evidence

On May 4, 2015, Dr. Gross, Appellant's treating physician from 2011 through 2016,[7] submitted a treating source statement (the "Statement") concerning Appellant's medical impairments and ability to perform certain physical functions. In the Statement, Dr. Gross diagnosed Appellant with, inter alia, IBD, migraines, anxiety, depression, and thyroid cancer. She also explained that these conditions caused Appellant to experience fatigue, joint pain, abdominal pain, dizziness, and headaches. Dr. Gross then expressed her medical opinion as to Appellant's ability to engage in certain activities. The prognosis was bleak. According to Dr. Gross, Appellant had the ability to sit for only 15 to 30 minutes at one time, and could not sit for even two hours "total in an 8-hour working day (with normal breaks)." A.R. 774. Dr. Gross opined that Appellant "frequently" experienced "pain severe enough to interfere with attention and concentration." *Id.*

In his November 3, 2016 decision, although the ALJ acknowledged Dr. Gross's Statement, the ALJ stated that he gave the medical opinion contained therein only "negligible weight." J.A. 16. We conclude that the ALJ erred in his treatment of Dr. Gross's medical opinion. The ALJ was required to do more than simply acknowledge the existence of Dr. Gross's opinion.

---

[7] The record demonstrates that Dr. Gross regularly treated Appellant during the SSA review period. However, it is not clear from the record precisely when that treating relationship began and whether it has concluded. Thus, it is possible that Dr. Gross's treatment of Appellant began earlier than 2011 and has continued past 2016.

9

1.

When determining Appellant's Social Security disability status, the ALJ was required to consider the medical opinions of Appellant's treating physicians. *See* 20 C.F.R. § 404.1527(b) ("[W]e will always consider the medical opinions in [a claimant's] case record.").[8] Furthermore, the ALJ was obligated to weigh those medical opinions in compliance with 20 C.F.R. § 404.1527(c)(2).

Section 404.1527(c)(2) sets out two rules an ALJ must follow when evaluating a medical opinion from a treating physician. First, it establishes the "treating physician rule," under which the medical opinion of a treating physician is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see also, e.g.*, *Arakas v. Comm'r of SSA*, 983 F.3d 83, 106–07 (4th Cir. 2020) (citing Section 404.1527(c)(2) and applying the treating physician rule); *Brown v. Comm'r of SSA*, 873 F.3d 251, 255–56 (4th Cir. 2017) (same). Second, if a medical opinion is not entitled to controlling weight under the treating physician rule, an ALJ must consider each of the following factors to determine the weight the opinion should be afforded: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of the treatment relationship";

---

[8] 20 C.F.R. § 404.1527 has been replaced by 20 C.F.R. § 404.1520c as the regulation that governs the evaluation of medical opinion evidence in Social Security cases. However, Section 404.1527 still applies to all Social Security claims filed before March 27, 2017, and, thus, remains the applicable regulation in this case.

(3) "[s]upportability," i.e., the extent to which the treating physician "presents relevant evidence to support [the] medical opinion"; (4) "[c]onsistency," i.e., the extent to which the opinion is consistent with the evidence in the record; (5) the extent to which the treating physician is a specialist opining as to "issues related to his or her area of specialty"; and (6) any other factors raised by the parties "which tend to support or contradict the medical opinion." 20 C.F.R. § 404.1527(c)(2)(i)–(6).

2.

Here, substantial evidence supports the ALJ's decision to not give *controlling* weight to the medical opinion contained in Dr. Gross's Statement. This is because while there is no indication that Dr. Gross's opinion was not "well-supported by medically acceptable clinical and laboratory diagnostic techniques," 20 C.F.R. § 404.1527(c)(2), a reasonable mind could conclude that the opinion conflicts with other evidence in the record. For instance, treatment notes from some of Appellant's other treating physicians demonstrate that, in the time leading up to the hearing before the ALJ, Appellant had experienced significant improvement with respect to her IBD. *See, e.g.*, A.R. 720 (Dr. Narayanachar Murali, a gastroenterology specialist, noting that Appellant's "abdominal pain is less intense and less frequent"), 890 (Dr. Murali noting that Appellant's IBD "symptoms have regressed dramatically").

Although we accept the ALJ's conclusion that Dr. Gross's medical opinion was not entitled to controlling weight, it does not follow that the ALJ had free reign to attach whatever weight to that opinion that he deemed fit. The ALJ was required to consider each

11

of the six 20 C.F.R. § 404.1527(c) factors before casting Dr. Gross's opinion aside. The ALJ plainly failed to do so.

3.

The ALJ explained that he afforded only negligible weight to Dr. Gross's medical opinion because he found the opinion to be inconsistent with other evidence in the record, and the basis for the opinion was "not adequately explained" by Dr. Gross. J.A. 16. This explanation by the ALJ touches on two of the Section 404.1527(c) factors -- consistency and supportability. However, there is no indication that the ALJ actually undertook the required analysis of Dr. Gross's opinion. Indeed, the ALJ never so much as acknowledged the existence of the Section 404.1527(c) factors. Moreover, the ALJ was completely silent as to the remaining four Section 404.1527(c) factors; for instance, the ALJ considered neither the "[l]ength of the treatment relationship and the frequency of examination," nor the "[n]ature and extent of the treatment relationship." 20 C.F.R. § 404.1527(c)(2)(i)–(ii).

The ALJ's failure to consider each of the Section 404.1527(c) factors was error. While an ALJ is not required to set forth a detailed factor-by-factor analysis in order to discount a medical opinion from a treating physician, it must nonetheless be apparent from the ALJ's decision that he meaningfully considered *each* of the factors before deciding how much weight to give the opinion. *See Arakas*, 983 F.3d at 107 n.16 ("20 C.F.R. § 404.1527(c) requires ALJs to consider *all* of the enumerated factors in deciding what weight to give a medical opinion." (emphasis in original)); *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000) (agreeing with the "[s]everal federal courts [that] have concluded that an ALJ is required to consider each of the § 404.1527[c] factors" when weighing the

12

medical opinion of a treating physician).  In this case, it is far from apparent that the ALJ considered -- or was even aware of -- each of the Section 404.1527(c) factors.  In addition to ignoring a majority of the specific factors, the ALJ's decision was bereft of any reference to the factors as a whole.  The ALJ simply declared that he possessed "the discretion to give less [than controlling] weight" to the opinion of the treating physician.  J.A. 15.  The ALJ never so much as hinted that his discretion was checked by the factors enumerated in Section 404.1527(c), which it is.  In failing to acknowledge and apply each of these six factors, the ALJ erred.

4.

This error necessitates a remand in this case.  Two of the factors ignored by the ALJ -- those which relate to the length, frequency, nature, and extent of Appellant's treatment relationship with Dr. Gross -- appear to cut in Appellant's favor.  Dr. Gross was Appellant's family physician.  The record demonstrates that from as early as 2011 through at least 2016, Dr. Gross treated her regularly, with appointments occurring at least every three months.  Through these frequent appointments, Dr. Gross surely "obtained a longitudinal picture of [Appellant's] impairment[s]."  20 C.F.R. § 404.1527(c)(2)(i).  Had the ALJ properly considered the treatment relationship between Dr. Gross and Appellant, he may not have been so quick to reject Dr. Gross's medical opinion.  This is significant, because if the ALJ had accorded greater weight to Dr. Gross's opinion that Appellant was incapable of sitting for even two hours total in an eight-hour working day and that she frequently experienced pain so severe that it interfered with her attention and concentration, this reasonably could

13

have altered the ALJ's conclusion that Appellant was capable of performing sedentary work.

Further, it is an elemental principle of administrative law that agency determinations must "be made in accordance with certain procedures which facilitate judicial review." *Patterson v. Comm'r of SSA*, 846 F.3d 656, 662 (4th Cir. 2017). One such procedure is Section 404.1527(c)'s requirement that ALJs consider each of the enumerated factors before assigning less than controlling weight to a medical opinion from a treating physician. Here, the ALJ neglected to even acknowledge the existence of those factors, much less engage in a meaningful discussion of them, so as to facilitate judicial review. Therefore, remand is necessary to allow the ALJ to consider Dr. Gross's medical opinion in light of each of the Section 404.1527(c) factors. *See id.* at 662–63 (remanding and noting that "because we cannot gauge the propriety of the ALJ's [] assessment, we cannot say that substantial evidence supports the ALJ's denial of benefits"); *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986) (remanding where the ALJ's failure to comply with certain Social Security procedures made it "simply impossible to tell whether there was substantial evidence to support [his] determination").

## C.

### Residual Functional Capacity Assessment

The failure to consider each of the 20 C.F.R. § 404.1527(c) factors was not the only error committed by the ALJ. The ALJ was also required to assess Appellant's RFC when determining her disability status. *See* 20 C.F.R. § 404.1594(f)(7). When the ALJ did so, he concluded that, as of March 31, 2013, Appellant "had the residual functional capacity

14

to perform sedentary work," but could not perform work requiring lifting, carrying, walking, stooping, balancing, crouching, kneeling, or climbing stairs or ramps. J.A. 11. The ALJ did not find that Appellant faced any limitations concerning her ability to sit. The ALJ explained that he based his RFC assessment on Appellant's alleged "symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," including the medical opinions of Appellant's treating physicians. *Id.* But we conclude that the framework through which the ALJ evaluated Appellant's RFC and the manner in which he explained his RFC findings were both in error.

1.

A Social Security claimant's RFC represents "the most [she] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). Evaluating an RFC requires an ALJ to "consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [her] ability to work.'" *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)). Pursuant to Social Security Ruling[9] 96-8p, 1996 WL 374184, at *1 (July 2, 1996), an ALJ's RFC assessment must include an evaluation of the

---

[9] Social Security Rulings, or "SSRs," are "interpretations by the Social Security Administration of the Social Security Act." *Pass v. Chater*, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995). They do not carry the force of law but are "binding on all components of the Social Security Administration," 20 C.F.R. § 402.35(b)(1), as well as on ALJs when they are adjudicating Social Security cases, *see Bray v. Comm'r of SSA*, 554 F.3d 1219, 1224 (9th Cir. 2009).

claimant's ability to perform the physical functions listed in 20 C.F.R. § 416.945(b). These functions are: "sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions [that] may reduce [a claimant's] ability to do past work and other work." 20 C.F.R. § 416.945(b). "Only after such a function-by-function analysis may an ALJ express RFC in terms of the exertional levels of work" of which he believes the claimant to be capable. *Monroe*, 826 F.3d at 179 (internal quotation marks omitted). Finally, every conclusion reached by an ALJ when evaluating a claimant's RFC must be accompanied by "a narrative discussion describing [] the evidence" that supports it. *Thomas*, 916 F.3d at 311. In this case, the ALJ's evaluation of Appellant's RFC fell short of these requirements.

2.

Here, the ALJ relied on an incorrect regulatory framework when he assessed Appellant's RFC. He did not cite to 20 C.F.R. § 416.945, the section of the Code of Federal Regulations that is titled "Your residual functional capacity" and explains how ALJs should assess a claimant's RFC. Nor did he cite to SSR 96-8p, the 1996 Social Security Ruling that provides guidance on how to properly evaluate an RFC. Finally, the ALJ did not indicate that his RFC assessment was rooted in a function-by-function analysis of how Appellant's impairments impacted her ability to work. Instead, the ALJ's RFC determination was based entirely on SSRs 96-7p and 16-3p, which set out the process ALJs use to "evaluate the intensity and persistence of [a claimant's] symptoms" and determine "the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the [] record." SSR 16-3p, 2017 WL 5180304, at

16

*2 (Oct. 25, 2017).[10] Of course, a claimant's symptoms, and the extent to which the alleged severity of those symptoms is supported by the record, is relevant to the RFC evaluation. *See* 20 C.F.R. § 416.945(a)(3) (stating that when evaluating an RFC, an ALJ should consider "limitations that result from [the claimant's] symptoms, such as pain"). But an RFC assessment is a separate and distinct inquiry from a symptom evaluation, and the ALJ erred by treating them as one and the same.

The ALJ's reliance on an incorrect regulatory framework led to an erroneous RFC assessment that, like the ALJ's failure to consider each of the 20 C.F.R. § 404.1527(c) factors, requires us to remand this case. We find three aspects of the ALJ's RFC analysis particularly troubling.

a.

First, the ALJ expressed Appellant's RFC "in terms of [] exertional levels of work" without first engaging in "a function-by-function analysis." *Monroe*, 826 F.3d at 179. "[A] proper RFC analysis" proceeds in the following order: "(1) evidence, (2) logical explanation, and (3) conclusion." *Thomas*, 916 F.3d at 311. But here, the ALJ began with step three, noting at the outset of his RFC evaluation that Appellant only "had the residual functional capacity to perform sedentary work." J.A. 11. Only then did the ALJ identify evidence and attempt to explain how that evidence logically supported his predetermined conclusion. In this way, the ALJ assessed Appellant's RFC in a manner that this court

---

[10] SSR 16-3p rescinded and superseded SSR 96-7p on March 28, 2016. Nonetheless, the ALJ cited to both rulings in his November 3, 2016 decision.

rejected as erroneous in *Thomas*. There, like here, the ALJ stated the claimant's "RFC first and only *then* conclud[ed] that the limitations caused by [her] impairments were consistent with that RFC." *Thomas*, 916 F.3d at 312 (emphasis and alteration in original).

b.

Second, the ALJ did not properly assess the extent to which Appellant's sitting problems impacted her ability to work. Appellant has argued throughout her administrative and judicial proceedings that her IBD and anal fissure cause her to experience discomfort when she sits for a prolonged period of time. But the ALJ apparently concluded that Appellant was not restricted in her ability to sit, as he did not indicate that her RFC was limited because of those problems. This conclusion should have been the result of an analysis that was separate from the ALJ's appraisal of Appellant's ability to perform other functions, and should have been accompanied by "a narrative discussion describing" the evidence supporting it. *Thomas*, 916 F.3d at 311. The ALJ's evaluation of Appellant's ability to sit was lacking in both respects. The ALJ never specifically discussed the extent to which Appellant's alleged sitting problems impacted her ability to perform sedentary work. The ALJ could not have supported a conclusion in this regard through a narrative discussion concerning the relevant evidence because he reached no such express conclusion in the first instance. In fact, the ALJ barely mentioned Appellant's sitting problems in his decision, and discussed them only when rattling off a laundry list of her many impairments and functional restrictions. This grouping of Appellant's sitting limitations with her other impairments and restrictions is a far cry from the "function-by-function analysis" the ALJ was required to conduct.

18

In arguing that the ALJ's RFC assessment does not require remand, Appellee, the Commissioner of the Social Security Administration, makes much of the fact that in *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015), we declined to adopt "a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis." But the lack of a rule *requiring* remand does not mean that remand is never the appropriate outcome when an ALJ fails to engage in a function-by-function analysis. Moreover, the reasoning in *Mascio* actually bolsters our conclusion that remand is required here. In that case, we were concerned that a per se rule would require ALJs to "discuss functions that [were] irrelevant or uncontested." *Id.* (internal quotation marks omitted). This case does not raise such concerns. The parties disagree over the extent that Appellant's medical conditions restricted her ability to sit, which makes that function "contested." Moreover, assessing Appellant's ability to sit is critically relevant to determining her disability status, as she likely would have been deemed incapable of performing sedentary work if the ALJ had found that, in addition to not being able to lift, carry, stand, stoop, balance, and climb stairs or ramps, she was not able to sit for a prolonged period of time.

c.

Third, the ALJ failed to analyze whether Appellant's RFC was impacted by her need to work near a restroom and take frequent bathroom breaks. There is considerable evidence in the record demonstrating that Appellant regularly experienced diarrhea and incontinence, as well as drainage from her anal fissure. Appellant argues that these problems caused her to require bathroom breaks at a frequent, and often unpredictable,

19

rate. Obviously, the need to visit the bathroom many times throughout the day impacts one's ability to work. And yet, the ALJ did not analyze Appellant's need for regular bathroom breaks. Instead, the ALJ simply noted that Appellant "accommodate[d] her drainage and accidents by using pads." J.A. 16. That finding misses the point. Pads may keep Appellant's clothes clean and help reduce the potential for embarrassing accidents. However, they do not save Appellant any trips to the bathroom, since the pads need to be changed once they are soiled. On remand, the ALJ should evaluate the frequency at which Appellant needed to use the bathroom and analyze how that restriction impacted her ability to work.

IV.

For the reasons set forth herein, we reverse the district court's order affirming the decision of the ALJ. The case is remanded to the district court with instructions to remand to the Commissioner for further administrative proceedings consistent with this opinion.

*REVERSED AND REMANDED*