**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 21-1116

CHERRELL CARSON FOOTMAN,

Plaintiff - Appellant,

v.

KILOLO KIJAKAZI, Acting Commissioner of Social Security,

Defendant - Appellee.

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro. Catherine C. Eagles, District Judge. (1:19-cv-01200-CCE-LPA)

Submitted: November 17, 2022                     Decided: February 7, 2023

Before AGEE and DIAZ, Circuit Judges, and TRAXLER, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

Cherrell Carson Footman, Appellant Pro Se. Peter Colonna-Romano, Special Assistant United States Attorney, Philadelphia, Pennsylvania, Matthew Jared Littman, SOCIAL SECURITY ADMINISTRATION, Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Cherrell Carson Footman appeals the district court's order accepting the recommendation of the magistrate judge and upholding the Administrative Law Judge's (ALJ) denial of Footman's application for disability insurance benefits and supplemental security income. When her informal brief is liberally construed, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), Footman argues, in relevant part, that the ALJ erred by disregarding her qualifying statements regarding her daily activities and failing to explain how those activities showed that she could perform full-time work at a sedentary level. We affirm.

"We review an SSA [(Social Security Administration)] decision only to determine if it is supported by substantial evidence and conforms to applicable and valid regulations." *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 658 (4th Cir. 2017). Accordingly, "[w]e must uphold the ALJ's decision if the ALJ applied correct legal standards and if the factual findings are supported by substantial evidence." *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 382-83 (4th Cir. 2021) (internal quotation marks omitted). In this context, "[s]ubstantial evidence is that which a reasonable mind might accept as adequate to support a conclusion. Though the threshold for such evidentiary sufficiency is not high, it requires that more than a mere scintilla of evidence support the ALJ's findings." *Id.* at 383 (cleaned up).

We do not "reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ" in evaluating whether a decision is supported by substantial evidence; "[r]ather, where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, we defer to the ALJ's decision." *Shinaberry v.*

*Saul*, 952 F.3d 113, 123 (4th Cir. 2020) (cleaned up). "However, we do not reflexively rubber-stamp an ALJ's findings," *Dowling*, 986 F.3d at 383 (internal quotation marks omitted), and, to enable meaningful judicial review, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence," *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013). "In other words, the ALJ must *both* identify evidence that supports [her] conclusion *and* build an accurate and logical bridge from that evidence to [her] conclusion." *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (cleaned up).

The Commissioner uses a five-step process to evaluate a disability claim. 20 C.F.R. § 404.1520(a)(4) (2022). "Steps 1 through 3 ask: (1) whether the claimant is working; (2) if not, whether she has a severe impairment; and (3) if she does, whether the impairment meets or equals a listed impairment." *Patterson*, 846 F.3d at 659 (internal quotation marks omitted). "If the claimant fails at step [3], the ALJ must then determine the claimant's residual functional capacity ("RFC")," which is the most a claimant can still do despite her physical and mental limitations. *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 254 (4th Cir. 2017). "After determining the claimant's RFC, the ALJ proceeds to step [4]" and determines whether the claimant is "able to perform [her] past work." *Id.* at 255 (internal quotation marks omitted). If the claimant is not able to perform her past work, "the ALJ finishes at step [5], where the burden shifts to the Commissioner." *Id.* To withhold benefits, "the Commissioner must prove . . . that the claimant can perform other work that exists in significant numbers in the national economy, considering the claimant's RFC, age, education, and work experience." *Id.* (cleaned up).

As part of this analysis, the ALJ follows a two-step framework to evaluate a claimant's symptoms, which requires the ALJ to "assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 95 (4th Cir. 2020). In doing so, "ALJs may consider the claimant's daily activities." *Id.* at 99. However, "'[a]n ALJ may not consider the *type* of activities a claimant can perform without also considering the *extent* to which she can perform them.'" *Id.* (quoting *Woods*, 888 F.3d at 694). And because "[a] claimant's inability to sustain full-time work due to pain and other symptoms is often consistent with her ability to carry out daily activities," *id.* at 101, when relying on a claimant's daily activities to justify her RFC, the ALJ must explain how the claimant's daily activities show "that she could persist through an eight-hour workday," *id.* at 100 (cleaned up).

Indeed, we have repeatedly vacated ALJ decisions for failing to account for limitations on a claimant's ability to perform daily tasks. *See, e.g.*, *id.* ("[T]he ALJ did not mention or address Arakas's testimony that she had difficulty mopping, vacuuming, cooking, cutting, or standing, and that her daughter had to do most of the housework," etc.); *Woods*, 888 F.3d at 694–95 ("[T]he ALJ did not consider Woods's statements that she cannot button her clothes, has trouble drying herself after bathing, and sometimes needs help holding a hairdryer; that she can prepare simple meals but has trouble cutting, chopping, dicing, and holding silverware cups; it takes her all day to do laundry;" etc.); *Brown*, 873 F.3d at 263 ("The ALJ did not acknowledge the extent of those activities as

4

described by Brown, e.g., that he simply prepared meals in his microwave, could drive only short distances without significant discomfort, only occasionally did laundry," etc.).

Our review of the record leads us to conclude that the ALJ adequately considered the extent to which Footman was limited in performing her daily activities. While the ALJ repeatedly stated that Footman is "independent in matters of personal care," able to "perform light housework, prepare meals, and manage her own finances," and "able to serve as the primary caretaker of her" son, these statements are consistent with substantial evidence in the record. For instance, the ALJ noted that Footman's most recent medical report demonstrates that she can walk unaided. There is also no dispute that she reported, as recently as March 2018, that she could independently perform certain household chores, went to church weekly where she sat and stood, and could drive short distances.

Unlike *Arakas*, *Woods*, and *Brown*, here, the ALJ also expressly acknowledged the limitations on Footman's ability to perform daily tasks, including her chronic pain, use of a cane, difficulty using her hands, need to elevate her feet, and that she requires help from friends and family to perform daily activities. And while the ALJ may not have listed every single additional qualifying statement about the extent to which Footman can perform daily activities, the ALJ did demonstrate that she adequately considered them and found them to be inconsistent with specific, objective evidence in the record.

We therefore conclude that the ALJ sufficiently built "an accurate and logical bridge from the evidence to [her] conclusion." *Arakas*, 983 F.3d at 100 (internal quotation marks omitted). We therefore affirm. And we dispense with oral argument because the

5

facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*