**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

No. 23-1954

---

MICHAEL ANTHONY OWENS,

    Plaintiff - Appellant,

  v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

    Defendant - Appellee.

---

Appeal from the United States District Court for the District of Maryland, at Baltimore. Brendan A. Hurson, Magistrate Judge.  (1:22-cv-02287-BAH)

---

Submitted:  October 23, 2024      Decided:  December 19, 2024

---

Before HARRIS and RUSHING, Circuit Judges, and KEENAN, Senior Circuit Judge.

---

Affirmed by unpublished per curiam opinion.

---

**ON BRIEF:** Andrew N. Sindler, LAW OFFICES OF ANDREW N. SINDLER, LLC, Severna Park, Maryland, for Appellant.  Brian C. O'Donnell, Associate General Counsel, David N. Mervis, Senior Attorney, Cathleen C. McNulty, Special Assistant United States Attorney, Office of Program Litigation, Office of the General Counsel, SOCIAL SECURITY ADMINISTRATION, Baltimore, Maryland; Erek L. Barron, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Michael Anthony Owens appeals the district court order upholding the Administrative Law Judge's (ALJ) denial of Owens' application for Social Security benefits. On appeal, Owens assert that the ALJ's determination that he is not disabled due to his severe urinary and gastrointestinal conditions was legally flawed and not based on substantial evidence. We affirm.

"We review a[ Social Security Administration] decision only to determine if it is supported by substantial evidence and conforms to applicable and valid regulations." *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 658 (4th Cir. 2017). Accordingly, we "must uphold the ALJ's decision if the ALJ applied correct legal standards and if the factual findings are supported by substantial evidence." *Dowling v. Comm' of Soc. Sec. Admin.*, 986 F.3d 377, 382-83 (4th Cir. 2021) (internal quotation marks omitted). In this context, "[s]ubstantial evidence is that which a reasonable mind might accept as adequate to support a conclusion. Though the threshold for such evidentiary sufficiency is not high, it requires that more than a mere scintilla of evidence support the ALJ's findings." *Id.* at 383 (cleaned up). We do not "reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ" in evaluating whether a decision is supported by substantial evidence; "[r]ather, where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the court "defer[s] to the ALJ's decision." *Shinaberry v. Saul*, 952 F.3d 113, 123 (4th Cir. 2020) (cleaned up).

The Commissioner uses a five-step process to evaluate a disability claim. 20 C.F.R. § 404.1520(a)(4). "Steps 1 through 3 ask: (1) whether the claimant is working; (2) if not,

2

whether []he has a severe impairment; and (3) if []he does, whether the impairment meets or equals a listed impairment." *Patterson*, 846 F.3d at 659 (internal quotation marks omitted). "If the claimant fails at step [3], the ALJ must then determine the claimant's residual functional capacity ('RFC')," which is the most a claimant can still do despite his physical and mental limitations. *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 254 (4th Cir. 2017). "After determining the claimant's RFC, the ALJ proceeds to step [4]" and determines whether the claimant is "able to perform his past work." *Id.* at 255 (internal quotation marks omitted). If the claimant is unable to perform his past work, "the ALJ finishes at step [5], where the burden shifts to the Commissioner." *Id.* To withhold benefits, "the Commissioner must prove . . . that the claimant can perform other work that exists in significant numbers in the national economy, considering the claimant's RFC, age, education, and work experience." *Id.* (cleaned up).

Owens first asserts that, in finding that "ready access to the bathroom" in his RFC was sufficient to address his urinary and gastrointestinal conditions, the ALJ erred in relying at least in part upon normal or mild clinical findings to find that Owens did not suffer from significant urgency. Owens contends that such a finding violated the holding in *Arakas v. Comm'r, Soc. Sec. Admin.,* 983 F.3d 83, 97 (4th Cir. 2020), that ALJs may not rely upon a lack of objective medical evidence to discount a claimant's subjective complaints of "fibromyalgia or some other disease that does not produce such evidence." However, Owens presents no evidence that severe urinary and digestive issues would not be reflected in clinical testing. Moreover, Owens does not cite to any case extending *Arakas*'s holding to irritable bowel syndrome (IBS) or urinary conditions.

3

Even assuming that urinary and bowel urgency would not be expected to produce clinical evidence, Owens' subjective complaints alone do not conclusively show significant urgency. Owens cites to numerous pages of the record, without explanation or description, for the proposition. However, most of the cited pages are either from after Owens' date last insured or prior to his onset date, at a time when he was working full time. Regarding the complaints during the relevant time period, while Owens did make complaints on occasion of urinary/bowel urgency, there was also evidence that Owens' bowel issues were more frequently related to constipation rather than diarrhea. With regard to urinary urgency, when he complained of this issue, his estimates ranged greatly from more than once per hour to every three to four hours. Moreover, as the ALJ noted, Owens infrequently sought treatment for these conditions, so these complaints were few and far between. Thus, even relying strictly on Owens' subjective complaints, there was substantial evidence supporting the ALJ's determination that Owens did not regularly suffer from bathroom urgency.

Next, Owens contends that the ALJ improperly relied on allegedly conservative treatment and purported improvement. Owens argues that he was treated with prescription drugs and underwent numerous tests and that no further treatment existed. He also contends that, although at times his conditions improved, his conditions waxed and waned and that the longitudinal record showed that his condition progressively worsened. However, again, Owens fails to cite any support for the conclusion that no further treatment existed for his IBS and urinary conditions, and he cites to no evidence explaining the frequency of his flares during the relevant time period. Notably, in his most recent

4

appointments (with two different doctors) that fell within the relevant time period, despite complaints of recurrent diarrhea, neither doctor noted a worsening of symptoms, and neither recommended stronger or additional medications. Instead, the first doctor surmised that Owens' complaints were not completely credible, and the second suggested that Owens' symptoms could be caused by the laxatives he was taking or an infection. We find that the ALJ's determination that Owens was treated conservatively was supported by substantial evidence. Moreover, given Owens' own repeated statements that he had suffered from the same conditions for decades, the record did not compel a finding that Owens' urinary and digestive conditions were worsening.

Owens next asserts that the ALJ improperly considered that he had certain digestive and urinary issues while he was working full-time. Specifically, Owens contends that the ALJ did not make necessary findings regarding whether his condition has worsened and whether his conditions were accommodated while he was working. However, Owens points to no relevant evidence that the ALJ overlooked. The ALJ's finding that Owens was previously able to work with similar conditions is directly relevant to whether Owens is currently able to work; moreover, the finding is supported by substantial evidence, consisting mainly of Owens' own statements.

Owens further challenges the ALJ's reliance on his school attendance and caregiving for his daughter and uncle to reject his subjective symptom complaints. Owens asserts that the record does not explain how Owens supported his family members and that the ALJ failed to consider that he was unable to finish school. Moreover, Owens avers that

the ALJ did not consider that, although Owens might be able to complete certain activities of daily living, he would not be able to persevere for a full work-day.

We find that the ALJ did not err in finding that Owens' activities were inconsistent with the degree of limitation alleged. That is, the ALJ reasonably concluded that Owens' allegations that he used the bathroom upwards of 30 times a day and suffered regularly from both urinary and fecal urgency could not be reconciled with being a full-time student and caring for two other adults. While the record does not contain detailed evidence of these activities, the ALJ considered them as just one part of her overall evaluation of Owens' complaints. Further, the ALJ cited Owens' activities for purposes of subjective symptom determination and not as examples of functions that Owens could perform flawlessly or for an entire day. The lack of evidence and clarity in the record about the extent of Owens' activities does not weigh in favor of Owens given that Owens bears the burden of showing that he is no longer able to perform his past work. *See Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017). Essentially, Owens' argument that his full-time school attendance and caregiving were not inconsistent with his subjective complaints essentially calls for a reweighing of the evidence, which is inappropriate at this juncture.

Finally, Owens contends that the district court erred by failing to make specific findings regarding the frequency and duration of his bathroom visits. Relying on *Dowling,* Owens asserts that, when a severe impairment involving restroom limitations is present, these findings are required. In *Dowling*, 986 F.3d at 389, we found that the ALJ erred in failing to analyze whether Dowling's "RFC was impacted by her need to work near a

6

restroom and take frequent bathroom breaks." We noted that the record contained evidence of regular diarrhea and incontinence, as well as drainage from an anal fissure. Dowling testified that such required frequent and unpredictable bathroom breaks. We found that the ALJ's conclusion that Dowling could use pads to accommodate her drainage and accidents missed the point, as Dowling would still need to visit the bathroom to change any soiled pads. We directed the ALJ on remand to "evaluate the frequency at which [Dowling] needed to use the bathroom and analyze how that restriction impacted her ability to work." *Id.*

Initially, we note that the *Dowling* Court did not rule that an ALJ must make findings regarding frequency and duration of bathroom visits whenever there is a severe impairment impacting bathroom use. Instead, we ruled that the ALJ erred by not making such findings despite "considerable evidence" demonstrating frequent and lengthy restroom needs. *Id.* Such evidence is missing here.

Notably, Owens does not cite to any evidence supporting a finding that he suffered from fecal or urinary incontinence. He also does not assert that his bathroom visits were of substantial duration beyond normal work breaks. Instead, Owens' complaints and testimony alleged, at most, frequency and urgency. The ALJ considered and rejected claims of urgency, a finding that was based on substantial evidence as discussed above. With regard to frequency, the vocational expert testified that five-minute bathroom breaks every hour would not prevent regular employment, and Owens told one of his consultative examiners that he could sit for about an hour before needing to use the bathroom. Thus, the ALJ's determination that "ready access to the bathroom" was sufficient to address

7

Owens' bathroom needs was supported by substantial evidence. Given the ALJ's explicit findings that normal work breaks were sufficient to deal with the frequency and duration of Owens' bathroom breaks, no further analysis was required.

Thus, the ALJ did not err in finding that Owens was not disabled under the SSA, and the district court appropriately rejected Owens' claims to the contrary. Accordingly, we affirm. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*

8