**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 22-1264**

———————

SHANETTE ROGERS,

             Plaintiff – Appellant,

      v.

KILOLO KIJAKAZI, Acting Commissioner of Social Security Administration,

             Defendant – Appellee.

———————

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte.  Robert J. Conrad Jr., District Judge.  (3:20-cv-00206-RJC-DSC)

———————

Argued:  December 6, 2022                          Decided:  March 20, 2023

———————

Before KING and AGEE, Circuit Judges, and Henry E. HUDSON, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

———————

Vacated and remanded by published opinion.  Judge King wrote the opinion, in which Judge Agee and Senior Judge Hudson joined.

———————

**ARGUED:**  George C. Piemonte, MARTIN, JONES, & PIEMONTE, PC, Charlotte, North Carolina, for Appellant.  David Nathaniel Mervis, SOCIAL SECURITY ADMINISTRATION, Baltimore, Maryland, for Appellee.  **ON BRIEF:**  Michel Phillips, MARTIN, JONES & PIEMONTE, PC, Charlotte, North Carolina, for Appellant. Samantha L. Zeiler, Special Assistant United States Attorney, Office of the General Counsel, SOCIAL SECURITY ADMINISTRATION, Baltimore, Maryland; Dena J. King,

United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

KING, Circuit Judge:

Plaintiff Shanette Rogers initiated this civil action under the Social Security Act in the Western District of North Carolina, contesting the denial of her claim for disability insurance benefits by the defendant Commissioner of the Social Security Administration (the "SSA"). Rogers has asserted that the SSA Commissioner erred in multiple ways. Her arguments include that, pursuant to precedents of this Court, the Commissioner should have accorded substantial weight to a prior determination by the Department of Veterans Affairs (the "VA") that Rogers is 100% disabled, but the Commissioner instead followed contrary new SSA rules providing that such a determination need not be considered, much less given any weight. As Rogers would have it, the new SSA rules cannot — and thus do not — abrogate this Court's precedents. The district court concluded, however, that the new SSA rules supersede our precedents and that the Commissioner acted appropriately in adhering to those rules. After then addressing many, but not all, of Rogers's other arguments, the court affirmed the Commissioner's decision. Rogers has appealed from the court's judgment.

As explained herein, although we agree with the district court's conclusion as to the new SSA rules, we recognize that the Commissioner otherwise erred for reasons that the court did not address. Accordingly, we vacate the court's judgment and remand for the court to further remand this matter for administrative proceedings consistent with today's opinion.

I.

The record reflects that Rogers, a resident of western North Carolina, has a master's degree in social work that she utilized in her employment from 2000 to 2018. During an earlier time period, from 1988 to 1992, she served in the United States Army and was honorably discharged. In the course of her Army service, Rogers was sexually assaulted — causing, or at least contributing to, post-traumatic stress disorder ("PTSD"). Rogers began psychiatric treatment through the VA for chronic PTSD in May 2017, and she ceased working in May 2018. After initially ruling Rogers to be 70% disabled, the VA ruled her to be 100% disabled as of September 2018.

In October 2018, Rogers filed her claim with the SSA for disability insurance benefits, alleging a disability beginning in May 2018 based on PTSD, plus depression and anxiety. Following a hearing conducted in October 2019, an SSA administrative law judge ("ALJ") denied Rogers's claim by a decision of December 2019. Although the ALJ deemed Rogers's PTSD to be a severe impairment and found that she is unable to engage in past relevant work, the ALJ further found that there are other jobs that Rogers can perform.

Notably, the SSA ALJ acknowledged the VA's determination that Rogers is 100% disabled and observed that it could "never be entitled to controlling weight." *See* A.R. 19.[1] The ALJ nonetheless gave some consideration to the VA's determination, as the ALJ

---

[1] Citations herein to "A.R. __" refer to the contents of the Administrative Record in these proceedings.

commented — without elaboration or explanation — that it was "only partly persuasive." *Id.* The ALJ thereby complied with the new SSA rules, under which the VA's determination could have been disregarded. *See* 20 C.F.R. §§ 404.1504, 404.1520b(c)(1). But the ALJ disobeyed our precedents, as they would have required much more consideration and discussion of the VA's determination and a detailed justification for not according it substantial weight. *See DeLoatche v. Heckler*, 715 F.2d 148, 150 & n.1 (4th Cir. 1983); *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 343 (4th Cir. 2012); *Woods v. Berryhill*, 888 F.3d 686, 692 (4th Cir. 2018).

The SSA Appeals Council denied review of the ALJ's decision in February 2020, meaning that the ALJ's decision became the SSA Commissioner's final decision. Thereafter, in April 2020, Rogers initiated this action against the Commissioner in the Western District of North Carolina, where the parties filed cross-motions for summary judgment and the matter was referred to a magistrate judge. By his Memorandum and Recommendation of Remand of March 2021, the magistrate judge recommended reversing the Commissioner's decision and remanding for further proceedings. *See Rogers v. Comm'r of Soc. Sec.*, No. 3:20-cv-00206 (W.D.N.C. Mar. 23, 2021), ECF No. 18. In so doing, the magistrate judge addressed only Rogers's argument with respect to the new SSA rules and agreed with her that the new rules cannot — and thus do not — abrogate this Court's precedents.

The magistrate judge's recommendation drew prompt objections from the SSA Commissioner. By its Order of January 2022, the district court declined to adopt the magistrate judge's recommendation and instead resolved to affirm the Commissioner's

5

decision. *See Rogers v. Comm'r of Soc. Sec.*, No. 3:20-cv-00206 (W.D.N.C. Jan. 13, 2022), ECF No. 23. With regard to the new SSA rules, the district court concluded that the new rules supersede this Court's precedents. In reaching that conclusion, the district court utilized a standard enunciated by the Supreme Court in its 2005 *Brand X* decision: that "[a] court's prior judicial construction of a statute trumps an agency construction otherwise entitled to *Chevron* deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion." *See Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982 (2005) (referring to *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984)).

From there, the district court approved the ALJ's application of the new SSA rules, as well as the balance of the ALJ's assessment of Rogers's claim for disability insurance benefits. In its analysis, the court addressed many, but not all, of Rogers's arguments. Upon the resultant entry of the court's judgment against her, Rogers timely noted this appeal. We possess jurisdiction pursuant to 28 U.S.C. § 1291.

II.

Where a plaintiff has turned to the federal courts to contest the SSA Commissioner's denial of a claim for disability insurance benefits, "a court of appeals applies the same standard of review as does the district court." *See Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 267 (4th Cir. 2017). Under that standard, the reviewing court must uphold the Commissioner's decision "when an ALJ has applied correct legal standards and the ALJ's

6

factual findings are supported by substantial evidence." *Id.* (internal quotation marks omitted); *see* 42 U.S.C. § 405(g).

## III.

Among the contentions of error raised by Rogers in these court proceedings are that the ALJ failed to apply correct legal standards by (1) adhering to the new SSA rules and failing to accord substantial weight to the VA's disability determination, and (2) omitting other significant evidence from the ALJ's analysis of Rogers's ability to work. For the reasons explained below, we reject the first of those arguments (as did the district court), but we agree with the second (which the district court did not address).

### A.

#### 1.

##### a.

We begin with Rogers's argument regarding the new SSA rules. As background, this Court concluded in our 1983 *DeLoatche* precedent that an SSA ALJ committed legal error by, inter alia, failing to discuss in his decision a state agency's prior disability determination. *See DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983). That conclusion was based on the proposition that an ALJ "must present [the reviewing court] with findings and determinations sufficiently articulated to permit meaningful judicial review." *Id.* It was also based on the separate proposition that another governmental agency's disability determination — though not binding on the SSA — "is entitled to consideration." *Id.* at 150 & n.1. In other words, *DeLoatche* recognized that another

7

governmental agency's disability determination must be considered by the SSA, and thus that such a disability determination must be discussed in the ALJ's decision so that there can be appropriate court review.

As detailed in our 2012 *Bird* precedent, the SSA's own directives subsequently became consistent with those articulated in *DeLoatche*. *See Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 343 (4th Cir. 2012). Specifically, SSA rules provided that another agency's disability determination "is not binding on the SSA." *Id.* (citing, inter alia, then-existing version of 20 C.F.R. § 404.1504). But concomitantly, an internal ruling issued by the SSA in 2006 — Social Security Ruling No. 06-03p — required consideration of "all record evidence relevant to a disability determination, including decisions by other agencies." *Id.* That Social Security Ruling instructed that "another agency's disability determination 'cannot be ignored and must be considered.'" *Id.* (quoting Social Security Ruling No. 06-03p, 71 Fed. Reg. 45,593, 45,596 (Aug. 9, 2006)).[2]

In *Bird*, which involved a disability determination by the VA, we expanded on *DeLoatche* — and the SSA's then-existing directives — by establishing "the precise weight that the SSA must afford to a VA disability rating." *See Bird*, 699 F.3d at 343. Our analysis of that issue encompassed both a survey of relevant opinions of our sister courts of appeals and a comparison of the SSA's and the VA's respective decision-making processes. *Id.*

---

[2] As we have explained, Social Security Rulings "are interpretations by the [SSA] of the Social Security Act" that "do not carry the force of law but are binding . . . on ALJs when they are adjudicating [SSA] cases." *See Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 n.9 (4th Cir. 2021) (internal quotation marks omitted).

8

Based on our perception that "the purpose and evaluation methodology of [the SSA and VA] programs are closely related," we concluded that "a disability rating by one of the two agencies is highly relevant to the disability determination of the other agency." *Id.* Accordingly, we held "that, in making a disability determination, the SSA must give substantial weight to a VA disability rating." *Id.* We allowed, however, that "an ALJ may give less weight to a VA disability rating when the record before the ALJ clearly demonstrates that such a deviation is appropriate." *Id.*

Finally, in our 2018 *Woods* precedent, we extended *Bird*'s holding to a North Carolina agency's disability determination, as we also saw a close relationship between the purpose and evaluation methodology of the SSA program and the state program. *See Woods v. Berryhill*, 888 F.3d 686, 692 (4th Cir. 2018). We thereby concluded that the SSA must accord substantial weight to the North Carolina agency's determination unless the record before the ALJ clearly shows that some lesser weight is appropriate. *Id.* And we elaborated that "in order to demonstrate that it is appropriate to accord less than substantial weight to [a disability determination by the North Carolina agency], an ALJ must give persuasive, specific, valid reasons for doing so that are supported by the record." *Id.* (internal quotation marks omitted) (relying on persuasive authority from other circuits).

b.

Meanwhile, in early 2017, the SSA had broadly revised its rules regarding the evaluation of medical evidence, with those new rules being applicable to claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017), *amended by* 82 Fed. Reg. 15,132 (Mar. 27,

9

2017).[3]   The new rules were expressly adopted pursuant to the SSA Commissioner's statutory authority, *see* 42 U.S.C. § 405(a), and following formal notice-and-comment proceedings.

Relevant here, the new rules identify "[d]ecisions by other governmental agencies and nongovernmental entities" as evidence that "is inherently neither valuable nor persuasive to the issue of whether you are disabled or blind under the [Social Security] Act." *See* 20 C.F.R. § 404.1520b(c)(1).  The new rules thus provide — contrary to our *DeLoatche*, *Bird*, and *Woods* precedents — that the SSA "will not provide any analysis about how we considered such evidence in our determination or decision."   *Id.* § 404.1520b(c).

The SSA provided a lengthy explanation of the new rules, reflecting the SSA's view that the purpose and evaluation methodology of its program actually are not closely related to the purpose and evaluation methodology of other programs, including the VA's.  *See* 82 Fed. Reg. at 5848.[4]  The new rules themselves expound:

---

[3] Although our 2018 *Woods* precedent post-dated the new SSA rules, *Woods* involved a claim filed before March 27, 2017, to which the new rules undisputedly did not apply.  *See* 888 F.3d at 691 n.1.  Insofar as the new rules were addressed in *Woods*, we suggested that the new rules indeed apply to claims filed on or after March 27, 2017.  *See id.*

[4] In support of the new rules, the SSA proffered the following four reasons for no longer requiring consideration of the disability determination of another governmental agency or nongovernmental entity:

> (1) the [Social Security] Act's purpose and specific eligibility requirements for disability and blindness differ significantly from the purpose and eligibility requirements of other programs; (2) the other agency or entity's

(Continued)

10

Other governmental agencies and nongovernmental entities — such as the Department of Veterans Affairs, the Department of Defense, the Department of Labor, the Office of Personnel Management, State agencies, and private insurers — make disability, blindness, employability, Medicaid, workers' compensation, and other benefits decisions for their own programs using their own rules. Because a decision by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits is based on its rules, it is not binding on us and is not our decision about whether you are disabled or blind under our rules. Therefore, in claims filed on or after March 27, 2017, we will not provide any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits.

See 20 C.F.R. § 404.1504 (citation omitted).

Coinciding with the implementation of the new rules, the SSA withdrew its Social Security Ruling No. 06-03p, which had instructed — consistent with this Court's precedents — that the disability determination of another agency "cannot be ignored and must be considered." *See* Recission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 82 Fed. Reg. 15,263 (Mar. 27, 2017), *amended by* 82 Fed. Reg. 16,869 (Apr. 6, 2017).

---

decision may not be in the record or may not include any explanation of how the decision was made, or what standards applied in making the decision; (3) our adjudicators generally do not have a detailed understanding of the rules other agencies or entities apply to make their decisions; and (4) over time Federal courts have interpreted and applied our rules and Social Security Ruling [No.] 06-03p differently in different jurisdictions.

*See* 82 Fed. Reg. at 5848. With particular regard to disability determinations by the VA, the SSA discussed an internal study demonstrating that nearly one-third of "individuals with a VA rating of 100%" were denied benefits by the SSA because of differences between "our rules and the VA's disability standards." *Id.* at 5849. According to the SSA, that data "supports our conclusion that [VA] ratings alone are neither inherently valuable nor persuasive in our disability evaluation because they give us little substantive information to consider." *Id.*

11

Under the new rules, however, the SSA will yet "consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that we receive as evidence in your claim." *See* 20 C.F.R. § 404.1504.

2.

At bottom, if our *DeLoatche*, *Bird*, and *Woods* precedents remain controlling as to SSA claims (like Rogers's) filed on or after March 27, 2017, the SSA ALJ was required to consider and thus also discuss the VA's determination that Rogers is 100% disabled. *See DeLoatche*, 715 F.2d at 150 & n.1. In such a situation, the ALJ was obliged to accord substantial weight to the VA's disability determination unless the record before the ALJ clearly showed that some lesser weight was appropriate. *See Bird*, 699 F.3d at 343. And the ALJ could demonstrate the appropriateness of according some lesser weight only by stating persuasive, specific, and valid reasons for doing so that found support in the record. *See Woods*, 888 F.3d at 692. If, however, the new SSA rules abrogate our precedents as to claims filed on or after March 27, 2017, the ALJ was not required to consider — much less discuss or accord any weight to — the VA's disability determination. *See* 20 C.F.R. §§ 404.1504, 404.1520b(c)(1). Rather, the ALJ merely had to consider any evidence underlying the VA's disability determination that Rogers submitted in support of her SSA claim. *Id.* § 404.1504.

Consequently, we are called upon to decide today whether our precedents or the new SSA rules apply to claims filed on or after March 27, 2017. As did the district court, we look to the Supreme Court's 2005 *Brand X* decision to resolve that issue. *See Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967 (2005). Specifically,

12

we utilize the standard outlined in *Brand X* for determining whether "[a] court's prior judicial construction of a statute trumps an agency construction." *Id.* at 982.

Pursuant to the *Brand X* standard, we must assess whether our precedents "hold[] that [their] construction follows from the unambiguous terms of the [Social Security Act] and thus leaves no room for agency discretion." *See* 545 U.S. at 982-83 (emphasizing that "[o]nly a judicial precedent holding that the statute unambiguously forecloses the agency's interpretation, and therefore contains no gap for the agency to fill, displaces a conflicting agency construction"). Quite clearly, our precedents do not so hold. And that makes sense, in that the Act itself does not address how or even if the SSA must deal with another agency's disability determination.

Next, then, we assess under the *Brand X* standard whether the new SSA rules are "otherwise entitled to *Chevron* deference." *See Brand X*, 545 U.S. at 982 (referring to *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984)). Where, as here, "the statute is silent or ambiguous with respect to the specific issue," *Chevron* identifies "the question for the court" as being "whether the agency's answer is based on a permissible construction of the statute." *See* 467 U.S. at 843.

Of utmost significance to the *Chevron* inquiry, Congress has expressly granted the SSA Commissioner "exceptionally broad" rule-making authority. *See Schweiker v. Gray Panthers*, 453 U.S. 34, 43 (1981). The Commissioner's statutory authority includes the power to adopt rules (like the new SSA rules) regarding "the nature and extent of the proofs and evidence . . . in order to establish the right to benefits." *See* 42 U.S.C. § 405(a). As such, "our review is limited to determining whether the [new rules] exceeded the

13

[Commissioner's] statutory authority and whether they are arbitrary and capricious." *See Sullivan v. Zebley*, 493 U.S. 521, 528 (1990) (internal quotation marks omitted). The new rules would exceed the Commissioner's statutory authority if, inter alia, they are "manifestly contrary to the statute." *See id.* at 528, 541 (quoting *Chevron*, 467 U.S. at 844). But if the new rules are neither outside the Commissioner's statutory authority nor arbitrary and capricious, we must accord those rules "controlling weight." *See id.* at 528 (quoting *Chevron*, 467 U.S. at 844).

Rogers has not offered a cogent basis for withholding *Chevron* deference from the new SSA rules, and we perceive none. The new rules are a type that Congress empowered the SSA Commissioner to adopt, they are not manifestly contrary to any provision of the Social Security Act, and they do not strike us as arbitrary and capricious in any way. Notably, it matters not that the new rules constitute a reversal of prior SSA directives, for as *Brand X* explains, "[a]gency inconsistency is not a basis for declining to analyze the agency's interpretation under the *Chevron* framework." *See* 545 U.S. at 981. So long as "the agency adequately explains the reasons for a reversal of policy" — as the SSA plainly has done here — "change is not invalidating, since the whole point of *Chevron* is to leave the discretion provided by the ambiguities of a statute with the implementing agency." *Id.* (internal quotation marks omitted).

In these circumstances, we are constrained to conclude under *Brand X* that our precedents do not trump the new SSA rules. That is, we agree with the district court that the new rules supersede our precedents and thus apply to claims filed on or after March 27, 2017. We also must agree that the SSA ALJ applied correct legal standards and committed

14

no error in adhering to the new rules and declining to accord substantial weight to the VA's determination that Rogers is 100% disabled.[5]

### B.

We therefore turn to Rogers's other contentions of error. In so doing, we focus on her meritorious argument that the SSA ALJ failed to apply correct legal standards by omitting significant evidence — beyond the VA's disability determination — from the analysis of her ability to work. That argument relates to the ALJ's assessment of Rogers's residual functional capacity, rendered in the course of the SSA's five-step evaluation process. *See* 20 C.F.R. § 416.920(a)(4). The residual functional capacity finding informed the ALJ's step-four conclusion that Rogers could no longer perform her past work, as well as the ALJ's step-five conclusion that Rogers could nonetheless perform other work. *See Mascio v. Colvin*, 780 F.3d 632, 634-36 (4th Cir. 2015).[6]

---

[5] To be clear, the new SSA rules addressed herein, *see* 20 C.F.R. §§ 404.1504, 404.1520b(c)(1), are among many that the SSA implemented for claims filed on or after March 27, 2017. By today's opinion, we do not consider or decide the validity of any of the other new rules.

[6] In *Mascio*, we summarized the SSA's five-step evaluation process under 20 C.F.R. § 416.920(a)(4) as follows:

> [T]he ALJ asks at *step one* whether the claimant has been working; at *step two*, whether the claimant's medical impairments meet the regulations' severity and duration requirements; at *step three*, whether the medical impairments meet or equal an impairment listed in the regulations; at *step four*, whether the claimant can perform her past work given the limitations caused by her medical impairments; and at *step five*, whether the claimant can perform other work.

(Continued)

15

A claimant's residual functional capacity "is 'the most' the claimant 'can still do despite' physical and mental limitations that affect her ability to work." *See Mascio*, 780 F.3d at 635 (quoting 20 C.F.R. § 416.945(a)(1)). An ALJ's residual functional capacity assessment is guided by 20 C.F.R. § 416.945 and Social Security Ruling No. 96-8p. That Social Security Ruling directs the ALJ to evaluate the claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis," meaning "8 hours a day, for 5 days a week, or an equivalent work schedule." *See* Social Security Ruling No. 96-8p, 61 Fed. Reg. 34,474, 34,475 (July 2, 1996). The ALJ's "assessment must include a discussion of the individual's abilities on that basis," and must be "based on all of the relevant evidence in the case record." *Id.* at 34,475-76.

With respect to her residual functional capacity, Rogers presented evidence to the ALJ that her abilities fluctuate during her menstrual cycle, such that "her functioning [is] drastically worse during [menstruation], as it remind[s] her of being raped during her time in the Army." *See* Br. of Appellant 46 (explaining that "Rogers's flashbacks and anxiety [are] worst [when she menstruates], and that is when she [is] especially prone to abandon routine household chores and isolate herself"). Rogers's medical records reflect that "her menstrual cycle continues to be a trigger for her"; that her "[f]lashbacks [have become] more intense and more frequent, especially during [menstruation]"; and that menstruation

---

*See* 780 F.3d at 634 (italics added). We also explained that "[i]f the first three steps do not lead to a conclusive determination, the ALJ then assesses the claimant's residual functional capacity." *Id.* at 635. The ALJ subsequently "use[s] the residual functional capacity finding at steps four and five." *Id.* at 636.

16

"is alarming to her," in that she "associate[s] the si[ght] of blood with [her] rape that happened in the Army." *See* A.R. 252, 264, 289 (internal quotation marks omitted).

Strikingly, however, the ALJ's decision omitted any mention of the menstrual cycle evidence. Moreover, the ALJ found therein that Rogers can adequately sustain work activities throughout an eight-hour workday, without addressing the possibility that her abilities will be different on some days than others. *See, e.g.*, A.R. 16 (finding that Rogers can work while consistently being "off task less than 10% of an eight-hour workday" and maintaining concentration for more "than 2-hour segments of an eight-hour workday"). As such, the ALJ either wholly ignored the menstrual cycle evidence, or the ALJ considered and discounted that evidence for reasons that were not explained.

Of course, to the extent that the VA's disability determination relied on the menstrual cycle evidence, the new SSA rules required the SSA ALJ to consider that evidence. *See* 20 C.F.R. § 404.1504. In any event, the ALJ was compelled by Social Security Ruling No. 96-8p to consider the menstrual cycle evidence, as it obviously is relevant to Rogers's ability to do sustained work-related activities on a regular and continuing basis. And because of the significance of that evidence, it should have been addressed in the ALJ's decision so that there could be appropriate judicial review. *See Thomas v. Berryhill*, 916 F.3d 307, 312 (4th Cir. 2019) (concluding that an SSA ALJ erred by failing "to discuss what appears to be a substantial portion of the record," regardless of whether the ALJ was ultimately "[r]ight or wrong" in deciding not to credit that evidence); *see also Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 388-89 (4th Cir. 2021)

17

(recognizing similar error resulting from ALJ's failure to address "considerable" and "relevant evidence").

Simply put, by omitting the menstrual cycle evidence from the residual functional capacity assessment as to Rogers, the ALJ's decision "is sorely lacking in the analysis needed for us to review meaningfully [the ALJ's] conclusions." *See Mascio*, 780 F.3d at 636-37. That legal error alone demands further administrative proceedings. *See id.* at 637 (explaining that "[b]ecause we are left to guess about how the ALJ arrived at his conclusions on [the claimant's] ability to perform relevant functions . . . , remand is necessary").[7]

## IV.

Pursuant to the foregoing, we vacate the judgment of the district court and remand for the court to further remand this matter for administrative proceedings consistent with our decision herein.

*VACATED AND REMANDED*

---

[7] As previously indicated, Rogers's argument concerning the menstrual cycle evidence is one of many contentions of error she has raised in these proceedings — and one that the district court did not address. We emphasize that we mean no criticism of the district court, for although the SSA Commissioner has conceded (and we agree) that such argument was preserved below, it was much more clearly presented in this appeal. We also underscore that we have not considered any of Rogers's other arguments, including that the ALJ erred in failing to account for Rogers's emotional support dog in the residual functional capacity assessment and the related analysis of her ability to work. The Commissioner should not interpret our silence on those issues as an opinion that no other error occurred.

18