**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 23-1795

APRYL D. SHUE,

Plaintiff - Appellant,

v.

MARTIN J. O'MALLEY, Commissioner of Social Security,

Defendant - Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  William Edward Fitzpatrick, Magistrate Judge.  (1:22-cv-00961-WEF)

Submitted:  April 25, 2024                                      Decided:  June 4, 2024

Before AGEE and THACKER, Circuit Judges, and TRAXLER, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

**ON BRIEF:**  Clifford M. Farrell, MANRING & FARRELL, Columbus, Ohio, for Appellant.  Brian C. O'Donnell, Associate General Counsel, David Somers, William Feldman, Office of Program Litigation, Office of the General Counsel, SOCIAL SECURITY ADMINISTRATION, Baltimore, Maryland; Jessica D. Aber, United States Attorney, Richmond, Virginia, Yuri S. Fuchs, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Apryl Shue ("Appellant") appeals the district court's decision affirming the Social Security Administration's ("SSA") denial of her request for disability benefits. Because we determine that the SSA's Administrative Law Judge ("ALJ") did not err in failing to consider Appellant's service animal, we affirm.

I.

Appellant was a special education teacher in Fairfax County, Virginia for approximately ten years. In March 2013, at 32 years old, Appellant was at work when she was hit in the head by a lacrosse ball. As a result, Appellant suffered a concussion and continued to suffer from multiple impairments in the years that followed. Appellant was off work and received workers' compensation benefits from March 2013 until March 2019. During that time, Appellant was treated by numerous medical professionals and received several forms of treatment for her migraines. In addition, and particularly relevant here, Appellant obtained what she refers to as a service dog sometime in late 2017 or early 2018. But the record is devoid of evidence that Appellant was prescribed a service animal by any medical professional. Instead, medical records indicate that Appellant simply began appearing at medical appointments with the service dog in February 2018. She informed her treatment providers that "[s]he has a service dog that is in the process of being trained to get her . . . medications [for her] when she has severe migraine[s]," and one provider

noted in Appellant's treatment plan that she should "[c]ontinue service dog training." J.A. 2010, 2022.[1]

Appellant filed for social security disability insurance benefits in June 2020, seeking benefits from the onset date of March 18, 2013, through March 13, 2019, the date she was last insured. By early 2019, Appellant's primary treatment providers had determined that Appellant could return to work without restriction. In addition, Appellant was evaluated by two medical consultants hired by the state agency responsible for the initial review of Appellant's disability claim in December 2020 and April 2021. Relevant here, Dr. William Humphries, who completed the April 2021 evaluation, determined that Appellant was capable of performing some work with certain exertional limitations, such as lifting limits and sitting or standing "about 6 hours in an 8 hour workday"; postural limitations, such as never climbing ladders, ropes, or scaffolds; and environmental limitations, such as "avoid[ing] even moderate exposure" to hazards like machinery or heights. J.A. 108–09.

Appellant had a hearing on her claim for disability insurance benefits before an ALJ on November 19, 2021. During the hearing, Appellant testified about her impairments and various treatments. She mentioned her service dog only once -- when asked to describe the "different things [she has] tried since 2013 to manage [her] migraines," Appellant testified that, among other things,

> I actually have a service dog that has been with me for five years now, almost five years, and she's trained in migraine alert and medication retrieval. She'll bring my medication bag to me

---

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

3

> that has my electrolyte drink. It has the rescue medications. It has a heat pad -- that you like click it on and one of those ice packs that you break and it, you know, does the chemical reaction thing.

J.A. 69.

The only other mention of the service dog during the hearing was when Appellant's representative asked the vocational expert whether a service animal is "a special accommodation that employers need to agree to on a case-by-case basis." J.A. 85. The vocational expert responded, "Yes. I mean it's what I consider a special accommodation. So, Yes." *Id.*

Following the hearing, the ALJ issued a written decision denying Appellant benefits on December 20, 2021. The ALJ determined that Appellant's residual functional capacity ("RFC") -- her "ability to do physical and mental work activities on a sustained basis despite limitations from her impairments," J.A. 16 -- allowed her "to perform light work as defined in 20 CFR § 404.1567(b)" except for certain postural and environmental limitations, including that "[s]he is limited to occupations requiring only frequent near acuity, far acuity, peripheral acuity, and depth perception." J.A. 22. Given that RFC, the ALJ relied on the vocational expert and the records from Appellant's own treatment providers -- who had determined that Appellant was capable of returning to work without restriction -- to determine that she was capable of performing either her former job as a special education teacher or, alternatively, other jobs in the national economy.[2] Therefore,

---

[2] The ALJ's written decision did not specify what other jobs might be available to Appellant. But the vocational expert testified that such jobs would include "cashier II . . . (Continued)

the ALJ concluded that Appellant was not disabled and denied her request for benefits. The ALJ's decision did not mention Appellant's service dog.

Appellant timely sought review of the ALJ's decision in the United States District Court for the Eastern District of Virginia. Appellant argued that the ALJ erred by failing to consider her service dog in formulating the RFC. But Appellant did not explain how considering the service dog would have changed her RFC. The district court affirmed the ALJ's decision. In doing so, the court determined that the ALJ was required to consider whether the service dog was "medically necessary," and that the ALJ erred by not making such a finding. J.A. 3110–14. However, the district court determined that the error was harmless because Appellant had not presented evidence sufficient to establish medical necessity in any event.

This timely appeal followed.

## II.

"Where a plaintiff has turned to the federal courts to contest the SSA Commissioner's denial of a claim for disability insurance benefits, 'a court of appeals applies the same standard of review as does the district court.'" *Rogers v. Kijakazi*, 62 F.4th 872, 875 (4th Cir. 2023) (quoting *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 267 (4th Cir. 2017)). "Under that standard, the reviewing court must uphold the Commissioner's decision when an ALJ has applied correct legal standards and the ALJ's

---

DOT Code 211.462-010"; "a checker[,] DOT Code 222.687-010"; and "an office mailroom clerk[,] DOT Code 209.687-026." J.A. 81.

factual findings are supported by substantial evidence." *Id.* (cleaned up); 42 U.S.C. § 405(g).

### III.

When a claimant applies for disability benefits, she must demonstrate the existence of a "medically determinable physical or mental impairment" that has persisted for at least twelve months and prevented participation in "substantial gainful activity." 42 U.S.C. § 423(d)(1)(A). To determine whether the claimant has met her burden and is, in fact, disabled, the SSA employs a five step test. The first three steps require the ALJ to determine the nature and severity of the claimant's impairments. Then, as is relevant here, the ALJ will reach a decision regarding the claimant's RFC "based on all the relevant medical and other evidence found in the record." *Shelley v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341, 347 (4th Cir. 2023); 20 C.F.R. § 404.1545(a)(1). At step four, "the ALJ considers the claimant's RFC and whether the record evidence shows that her alleged disability inhibits her ability to perform her past relevant work." *Shelley*, 64 F.4th at 347. And finally, step five requires the ALJ to decide whether the claimant could adjust to other work considering her RFC, age, education, and work experience. *See* 20 C.F.R. § 404.1520(a)(4)(i)–(v).

Here, the ALJ determined that Appellant's RFC allowed her "to perform light work as defined in 20 CFR § 404.1567(b)" except for certain postural and environmental limitations. J.A. 22. The ALJ determined that even with her RFC, Appellant was able to perform her former job as a special education teacher or, alternatively, that she was able to perform other work.

6

Appellant challenges the ALJ's decision only with respect to the formulation of the RFC. Specifically, Appellant argues that the ALJ was required to determine whether her service dog was "medically necessary" and, because she believes the dog is medically necessary, she argues the ALJ should have considered her use of a service dog in the RFC. In support, Appellant relies on various district court decisions that require consideration of medically necessary service animals in the ALJ's evaluation of a claimant's RFC. *See Santos v. Colvin*, No. 3:12-cv-05827, 2012 WL 5176846, at *5 (W.D. Wash. Sept. 12, 2013); *Rentfro v. Colvin*, No. 14-cv-3015, 2015 WL 12868081, at *13 (C.D. Ill. Oct. 21, 2015); *Payano v. Colvin*, No. 2:15-cv-00294, 2017 WL 4778593, at *3–4 (D. Nev. Oct. 23, 2017); *McGehee v. Berryhill*, 386 F. Supp. 3d 80, 87–88 (D. Mass. 2019); *Cordell v. Saul*, No. 3:19-cv-47, 2019 WL 6257994, at *18–19 (N.D.W. Va. Nov. 4, 2019); *Early v. Kijakazi*, No. 5:21-cv-00096, 2022 WL 2057467, at *5 (W.D.N.C. June 7, 2022); *Smith v. O'Malley*, No. 5:23-cv-11, 2024 WL 996736, at *5 (E.D.N.C. Jan. 22, 2024).

The SSA counters that the ALJ was not required to consider the service animal because Social Security Ruling 11-2P provides that the SSA does "not consider whether [the claimant] could [perform work] with accommodations, even if an employer would be required to provide reasonable accommodations under the Americans with Disabilities Act of 1990." Titles II & XVI: Documenting & Evaluating Disability in Young Adults, SSR 11-2P, 2011 WL 4055665 (S.S.A. Sept. 12, 2011) ("SSR 11-2P"). The SSA argues that the service animal would be an accommodation and, therefore, should not have been considered. And the SSA argues that, as the district court held, even if the ALJ was

7

required to consider the service animal, any error was harmless because Appellant failed to present sufficient evidence of the service animal's medical necessity.

Upon review of the record, we conclude that the ALJ did not err in failing to consider the service animal when determining Appellant's RFC. We note that the medical necessity test, as adopted by the district court below, appears to be in tension with the requirement that the RFC be "based on all the relevant medical *and other evidence* found in the record." *Shelley*, 61 F.4th at 347 (emphasis supplied); *see also* 20 C.F.R. § 404.1545(a)(1). Nonetheless, we need not resolve whether the medical necessity test is, in fact, the appropriate test. Appellant's claim fails in any event because she failed to present sufficient evidence -- medical or nonmedical -- of her need for the service dog in the workplace. She did not provide evidence that the service dog was medically necessary, nor did she provide evidence or argue that the service dog would be a limitation rather than an accommodation in the workplace. Indeed, she made no argument before the ALJ at all about the service dog limiting her ability to perform a job.

What is more, Appellant does not challenge the validity of SSR 11-2P. *See* Appellant's Reply Br. at 3 ("The Supreme Court and [SSA] have both made it clear that [SSA] does not need to consider the possibility of a 'reasonable accommodation' when creating the [RFC]. **Ms. Shue agrees.**" (emphasis supplied)). Rather, Appellant argues only that SSR 11-2P is inapplicable because the vocational expert referred to the dog as a "special accommodation" rather than a "reasonable accommodation." Appellant does not explain how there is any relevant distinction between the two, and we find her argument to be unpersuasive.

8

## IV.

Thus, under any standard, we conclude that the ALJ was not required to consider the service animal in this case.

*AFFIRMED*