**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 17-2215

NIKKI T. THOMAS,

        Plaintiff - Appellant,

    v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

        Defendant - Appellee.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Max O. Cogburn, Jr., District Judge. (3:16-cv-00836-MOC)

Argued: November 1, 2018                    Decided: January 15, 2019

Before KING, FLOYD, and THACKER, Circuit Judges.

Vacated and remanded by unpublished opinion. Judge Floyd wrote the majority opinion, in which Judge Thacker joined. Judge King wrote a separate opinion concurring in part and concurring in the judgment.

**ARGUED:** Dana Wayne Duncan, DUNCAN DISABILITY LAW, SC, Nekoosa, Wisconsin, for Appellant. David Nathaniel Mervis, SOCIAL SECURITY ADMINISTRATION, Baltimore, Maryland, for Appellee. **ON BRIEF:** R. Andrew Murray, United States Attorney, Charlotte, North Carolina, Kaba-Kabi A. Kazadi, Special Assistant United States Attorney, Gill B. Beck, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Asheville, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

FLOYD, Circuit Judge:

The Acting Commissioner of Social Security (Commissioner) denied Nikki T. Thomas's application for supplemental security income (SSI). Thomas sought review in the district court, and the district court affirmed the denial of her application. This appeal followed. We now hold that the administrative law judge (ALJ) who effectuated the denial of Thomas's application made two legal errors. First, the ALJ did not sufficiently explain the reasoning underlying her evaluation of Thomas's residual functional capacity (RFC). Second, the ALJ neither identified nor resolved an apparent conflict between the testimony of a vocational expert (VE) and the DICTIONARY OF OCCUPATIONAL TITLES (4th ed. 1991) (hereinafter "DOT").[1] Accordingly, we vacate and remand.

I.

On October 30, 2012, Thomas applied for SSI, alleging that a combination of physical and mental impairments had left her unable to stay employed. The Commissioner denied Thomas's application both initially and on reconsideration; at Thomas's request, her application then went to an ALJ for further review.

An ALJ reviews an application for SSI using a five-step process established by the

---

[1] The DOT is a "Social Security Administration resource[] that list[s] occupations existing in the economy and explain[s] some of the physical and mental requirements of those occupations." *Pearson v. Colvin*, 810 F.3d 204, 205 n.1 (4th Cir. 2015). The Social Security Administration also uses a companion resource to the DOT, entitled SELECTED CHARACTERISTICS OF OCCUPATIONS DEFINED IN THE REVISED DICTIONARY OF OCCUPATIONAL TITLES (1993), that explains additional physical and environmental demands of the occupations listed in the DOT.

3

regulations of the Social Security Administration (Administration). *See* 20 C.F.R. § 416.920(a)(4) (2018); *see also Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (summarizing the five-step process). Briefly: at step one, the ALJ determines whether the claimant is unemployed. At step two, the ALJ determines whether the claimant's impairments are severe enough, and have lasted long enough, to satisfy the regulations' threshold requirements. At step three, the ALJ determines whether the claimant's impairments match—or are functionally equal to—an impairment listed in the regulations; if not, the ALJ makes a finding as to the claimant's RFC, which is the maximum work the claimant can do for a full workweek despite her impairments. At step four, the ALJ determines whether the claimant's RFC enables her to do the work she did in the past; if not, the ALJ moves on to step five. At step five, the ALJ determines whether the claimant—given her RFC, her age, her education, and her prior work experience—can do any other work that "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2). For the first four steps, the burden lies with the claimant; at step five, it shifts to the Commissioner. *Mascio*, 780 F.3d at 635.

Here, at steps one through three, the ALJ determined that Thomas was not employed, that she suffered from severe physical and mental impairments, and that her impairments did not meet or equal any of the impairments listed in the Administration's regulations. Therefore, the ALJ examined the evidence of Thomas's impairments and made a finding as to Thomas's RFC. In relevant part, the ALJ found that Thomas

> has the residual functional capacity to perform light work . . . . [She] is able to follow short, simple instructions and perform routine tasks, but no work requiring a production rate or demand pace. She can have occasional

4

public contact or interaction and frequent, but not continuous, contact or interaction with coworkers and supervisors. [She] must avoid work involving crisis situations, complex decision making, or constant changes in a routine setting.[2]

A.R. 21.[3]

Having established Thomas's RFC, the ALJ concluded that Thomas could not perform the work in which she had previously been employed. The ALJ therefore reached the fifth and final step of the process: determining whether, given the limitations embodied in her RFC, Thomas could perform any work that existed in significant numbers in the national economy. To make that determination, the ALJ relied on a VE's testimony. The VE testified that Thomas could perform three jobs that existed in significant numbers in the national economy: "marker," "final inspector," and "order caller." A.R. 26. (According to the DOT, all three jobs require Level 2 reasoning, which, among other things, entails "carry[ing] out detailed but uninvolved written or oral instructions . . . ." DOT 209.587-034, 1991 WL 671802; DOT 727.687-054, 1991 WL 679672; DOT 209.667-014, 1991 WL 671807.) The ALJ accepted the VE's testimony and concluded that Thomas's impairments did not prevent her from working; consequently, Thomas's application for SSI was denied.

Thomas sought review of the ALJ's decision in district court. The district court granted summary judgment to the Commissioner and affirmed the ALJ's decision.

---

[2] This is the portion of the RFC that deals with Thomas's mental limitations. Other portions of the RFC deal with Thomas's physical limitations. We focus on the portion dealing with Thomas's mental limitations because that is the only portion Thomas challenges on appeal.

[3] Citations to the administrative record are abbreviated "A.R."

Thomas now appeals. She argues, in relevant part, that the ALJ made legal errors at two stages of the review process: first, in her evaluation of Thomas's RFC; second, in her reliance on the VE's testimony.

## II.

We review de novo the district court's decision to grant or deny summary judgment. *Martin v. Lloyd*, 700 F.3d 132, 135 (4th Cir. 2012). Like the district court, we will not disturb an ALJ's decision on an application for SSI "when [the] ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012).

## III.

We agree with Thomas that the ALJ who reviewed her application made two errors of law. First, when evaluating Thomas's RFC, the ALJ did not sufficiently explain her conclusions regarding Thomas's mental impairments. Second, the ALJ did not identify or resolve an apparent conflict between the DOT and the testimony of the VE. Each error requires us to vacate and remand.

## A.

We begin with the ALJ's evaluation of Thomas's RFC. According to Thomas, the ALJ erred at this stage by failing to provide a logical explanation of how she weighed the

record evidence and arrived at her RFC findings. We conclude that Thomas is correct, given our binding decisions in *Woods v. Berryhill*, 888 F.3d 686 (4th Cir. 2018); *Monroe v. Colvin*, 826 F.3d 176 (2016); and *Mascio*, 780 F.3d at 632.[4]

The Administration has specified the manner in which an ALJ should assess a claimant's RFC. The ALJ must consider all of the claimant's "physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work." *Monroe*, 826 F.3d at 188. In doing so, the ALJ must provide "a narrative discussion describing how the evidence supports each conclusion . . . ." SSR 96-8P, 1996 WL 374184 at *7 (July 2, 1996). Once the ALJ has completed this function-by-function analysis, the ALJ can make a finding as to the claimant's RFC.

Thus, a proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion. The second component, the ALJ's logical explanation, is just as important as the other two. Indeed, our precedent makes clear that meaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion. *Woods*, 888 F.3d at 694.

In this case, the ALJ's analysis of Thomas's RFC contains too little logical explanation for us to conduct meaningful appellate review. We are particularly troubled by four flaws in the ALJ's analysis:

First, the ALJ drew no explicit conclusions about how Thomas's mental limitations

---

[4] We note that *Mascio* was published only a month before the ALJ denied Thomas's application, while *Woods* and *Monroe* were published well after.

affect her ability to perform job-related tasks for a full workday—a benchmark established by the Administration's own regulations. SSR 96-8P, 1996 WL 374184 at *2; *see also Mascio*, 780 F.3d at 637 (stating that ALJ's RFC analysis was "sorely lacking" because, among other things, the ALJ "said nothing about [the claimant's] ability to perform [job-related functions] for a full workday").

Second, the ALJ did not sufficiently explain how she weighed significant evidence related to Thomas's mental-health treatment. The ALJ accurately stated that "the record . . . includes numerous findings of normal mood and affect or normal mental status examinations," but she omitted that those findings—at least, those she cites—were made by physicians treating Thomas's chronic foot pain. A.R. 24. There is no way for us to know whether, or why, the ALJ gave those findings the same weight as inconsistent findings made by Dr. Ida Richmond, a licensed psychologist who evaluated Thomas. Similarly, the ALJ did not say why she declined to discuss Thomas's record of mental-health evaluations at Bridge Builders Family and Youth Services. To be sure, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in [her] decision." *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (internal citation and quotation marks omitted). But here, the ALJ chose not to discuss what appears to be a substantial portion of the record relating to Thomas's treatment by mental-health specialists, even while citing curt mental-health notes made by doctors treating Thomas's foot ailment. Right or wrong, that decision warrants some explanation.

Third, the ALJ "express[ed] [Thomas's] RFC first and only *then* conclud[ed] that the

limitations caused by [her] impairments were consistent with that RFC . . . ." *Monroe*, 826 F.3d at 188 (emphasis in original). Stating a claimant's RFC before conducting a function-by-function analysis is an error—even though, on its own, it does not necessarily require remand. *Id.*

Fourth, while the ALJ stated that Thomas could not perform work "requiring a production rate or demand pace," she did not give us enough information to understand what those terms mean. A.R. 21. That makes it difficult, if not impossible, for us to assess whether their inclusion in Thomas's RFC is supported by substantial evidence. The Commissioner contends that "production rate" and "demand pace" are "common vocationally relevant functional limitations." Resp. Br. at 21. But those terms appear in a vanishingly small number of Social Security cases involving RFC evaluations. Of the cases in which the terms do appear, several originated with the same ALJ as the one who denied Thomas's application. *See, e.g.*, *Dyrda v. Colvin*, 47 F. Supp. 3d 318, 321 (M.D.N.C. 2014). We therefore disagree with the Commissioner: the terms do not seem to be especially common—certainly not common enough for us to know what they mean without elaboration.

Combined, the above-listed missteps in the ALJ's RFC evaluation frustrate our ability to conduct meaningful appellate review, requiring us to vacate and remand.[5] In so

---

[5] Thomas argues that her RFC, as stated by the ALJ, does not account for her moderate limitations in concentration, persistence, and pace—even though the RFC limits her to jobs that do not require a "production rate" or "demand pace." We decline to resolve that question. As discussed above, the ALJ's evaluation of Thomas's mental impairments for purposes of the RFC contains too little explanation for us to meaningfully review it.

doing, we express no opinion on whether the ALJ's RFC findings were correct. We simply ask the ALJ to give us a clearer window into her reasoning.

B.

Since it is likely to come up again below, we address another issue raised by Thomas's appeal: whether the ALJ should have identified and resolved a conflict between the DOT and the testimony of the VE. This requires us to decide whether there is an "apparent conflict" between a limitation to "short, simple instructions" (as found in Thomas's RFC) and a need to carry out "detailed but uninvolved . . . instructions" (as found in jobs requiring Level 2 reasoning). We hold that there is.

Some background explanation is in order. When, as in this case, an ALJ determines that a claimant's RFC prevents the claimant from performing her past work, the ALJ reaches step five of the review process. Recall that at this step, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant is capable of doing other work that exists in significant supply in the national economy. *Mascio*, 780 F.3d at 635. The Commissioner often seeks to meet this burden through the testimony of a VE. Specifically, as in this case, the Commissioner calls a VE to testify to

Without further explanation, we simply cannot tell whether the RFC finding— particularly the portion restricting Thomas to jobs that do not require a "production rate" or "demand pace"—properly accounts for Thomas's moderate limitations in concentration, persistence, and pace. On remand, the ALJ will need to establish for how long, and under what conditions, Thomas is able "to focus [her] attention on work activities and stay on task at a sustained rate." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00E(3). Only then will we or any court be able to meaningfully review the ALJ's RFC finding.

10

whether a hypothetical person with the same limitations as the claimant would be able to perform any of the jobs listed in the DOT. *Id.*; *see also* SSR 00-4P, 2000 WL 1898704 at *2 (Dec. 4, 2000).

An ALJ cannot rely unquestioningly on a VE's testimony. Rather, an ALJ must ensure that any "apparent" conflicts between the Dictionary and the VE's testimony are reasonably resolved. SSR 00-4P, 2000 WL 1898704 at *2. To that end, the ALJ must ask the VE whether his or her testimony conflicts with the DOT. If the answer is "yes," the ALJ "must elicit a reasonable explanation for the conflict before relying on" the testimony. *Id.* But even if the VE answers "no," the ALJ has an affirmative "duty to make an independent identification of apparent conflicts." *Pearson v. Colvin*, 810 F.3d 204, 210 (4th Cir. 2015). This means that the ALJ must recognize and resolve ways in which a VE's testimony "seems to, but does not necessarily," conflict with the "express language" of the DOT—even if the conflict is not "obvious." *Id.* at 209.

Our opinion in *Pearson* furnishes us with a useful example of what makes a conflict apparent.[6] In *Pearson*, an ALJ evaluated an SSI claimant's RFC and determined that the claimant "could only occasionally reach upward" with his "nondominant arm." *Id.* at 210. At step five of the review process, a VE testified that in spite of the claimant's physical limitation, the claimant could perform several jobs that existed in significant numbers in the national economy. *Id.* Yet according to the DOT, all the jobs identified by the VE required "*frequent* reaching." *Id.* at 210–11 (emphasis in original). We held

---

[6] We note that *Pearson* was decided after the ALJ denied Thomas's application.

that there was an apparent conflict between the DOT and the VE's testimony—even though, based on the DOT, it was not clear whether the jobs identified by the VE would ever require the claimant to reach *overhead* with his *nondominant* arm. Because the ALJ had failed to identify or resolve this conflict, we remanded. *Id.* at 211.

The VE's testimony in this case contains a comparable conflict with the DOT. After being informed of Thomas's RFC, the VE testified that Thomas was capable of holding three jobs: marker, final inspector, and order caller. As noted above, the DOT states that all three of the jobs identified by the VE require employees to "carry out detailed but uninvolved written or oral instructions . . . ." DOT 209.587-034, 1991 WL 671802; DOT 727.687-054, 1991 WL 679672; DOT 209.667-014, 1991 WL 671807. By comparison, Thomas's RFC limits her to jobs that involve only "short, simple instructions."

We believe that Thomas, being limited to short, simple instructions, may not be able to carry out detailed but uninvolved instructions. This is not a categorical rule—some instructions, particularly if they are well-drafted, may be simultaneously short, simple, detailed, and uninvolved. Even so, the conflict between Thomas's limitation to short, simple instructions and the VE's testimony that Thomas could perform jobs that include detailed but uninvolved instructions is as apparent as the conflict we identified in *Pearson*. Since we held that an apparent conflict existed in *Pearson*, we are satisfied that one exists in this case, too.[7] We remand so that the ALJ can resolve the conflict in

---

[7] The Commissioner did not argue that this conflict, if apparent, would be harmless; therefore, we decline to reach that question now. *See United States v. Hall*, 858 F.3d 254, 280 n.8 (4th Cir. 2017) (explaining that government may waive harmless error

12

accordance with the Administration's regulations.

IV.

We hereby vacate the district court's order granting summary judgment to the Commissioner. The case is remanded to the district court with instructions to remand to the Commissioner for such further administrative proceedings as may be appropriate.

*VACATED AND REMANDED*

---

argument).

KING, Circuit Judge, concurring in part and concurring in the judgment:

I am pleased to concur in all of the majority opinion except Part III.A. With great respect for the views of my good colleagues, I am unable to join that part of the majority's analysis because it is in tension with our recent decision in *Keller v. Berryhill*, No. 17-2248, where we properly affirmed a very similar mental RFC explanation from the same ALJ. I ultimately agree, however, that we should vacate the district court's judgment and return this case to the Commissioner of Social Security for such further administrative proceedings as may be appropriate.