**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 23-1760**

───────────────

CHYANNE T. TURNER,

　　　　Plaintiff – Appellant,

　　v.

COMMISSIONER OF SOCIAL SECURITY,

　　　　Defendant – Appellee.

───────────────

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  T. S. Ellis, III, Senior District Judge.  (1:22-cv-00831-TSE-JFA)

───────────────

Submitted:  April 30, 2024　　　　　　　　　　　Decided:  May 30, 2024

───────────────

Before WILKINSON, AGEE and FLOYD, Circuit Judges.

───────────────

Affirmed by unpublished per curiam opinion.

───────────────

**ON BRIEF:**  Clifford M. Farrell, MANRING & FARRELL, Columbus, Ohio, for Appellant.  Jessica D. Aber, United States Attorney, Richmond, Virginia, Matthew J. Mezger, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

───────────────

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Chyanne Turner appeals the district court's decision upholding an administrative law judge's (ALJ) denial of her application for disability benefits under Title II of the Social Security Act.[1] Specifically, she argues the ALJ's denial of benefits cannot stand because it failed to include—or, alternatively, failed to explain the omission of—a limitation relating to absenteeism when calculating her residual functional capacity (RFC). Because we agree with the district court that the ALJ's analysis permits meaningful judicial review and substantial evidence supports its RFC assessment, we affirm the district court's judgment.

I.

To receive Social Security disability benefits, a claimant must prove she has a disability. *Walls v. Barnhart*, 296 F.3d 287, 289 (4th Cir. 2002); *see also* 20 C.F.R. § 404.1505 (defining disability). And to determine whether a claimant has satisfied that burden, an ALJ must undertake a five-step sequential evaluation, most of which is not at issue in this case. 20 C.F.R. § 404.1520 (describing the process); *see also Patterson v.*

---

[1] "[T]he Social Security Act provides disability benefits under two programs, known by their statutory headings as Title II and Title XVI. Title II provides old-age, survivor, and disability benefits to insured individuals irrespective of financial need. . . . The regulations that govern the two programs are, for [present] purposes, equivalent," so we cite interchangeably to cases discussing the meaning of applicable regulatory language. *Smith v. Berryhill*, 139 S. Ct. 1765, 1772 (2019) (cleaned up).

2

*Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 658–60 (4th Cir. 2017).[2] Between steps three and four, an ALJ must calculate the claimant's RFC, which is defined as the *most* that a claimant is able to do on a sustained basis despite any limitations from her physical and mental impairments. 20 C.F.R. § 404.1545(a)(1). And it's at this RFC assessment that Turner argues the ALJ committed reversible error. Specifically, she contends that the ALJ should have included a limitation arising from her mental impairments recognizing that she would have absenteeism or punctuality problems one or two times per month. Alternatively, she argues that the ALJ needed to explain why it was omitting such a limitation. Building on that alleged error, Turner asserts that because the ALJ uses a claimant's RFC when considering steps four and five, the mistaken RFC assessment negatively impacted the analysis at those steps as well and caused the ALJ to improperly deny her application for benefits.

## A.

In 2018, Turner applied for disability benefits based on a combination of physical and mental impairments. As amended, her application claimed a disability onset date of June 1, 2017. Turner's extensive medical record shows that she has diagnoses of post-

---

[2] "Steps 1 through 2 ask: (1) whether the claimant is working; (2) if not, whether she has a 'severe impairment'; and (3) if she does, whether the impairment 'meets or equals a listed impairment.'" *Patterson*, 846 F.3d at 659 (quoting § 404.1520). A claimant who satisfies step three is automatically found to be disabled. *Id.* (citing § 404.1520(d)). "At step 4, the decision maker determines whether the impairment prevents the claimant from performing 'past relevant work.'" *Id.* (quoting § 404.1520(a)(4)(iv)). While the claimant bears the burden of proof for steps one through four, at step five, the burden shifts to the Commissioner "to demonstrate that the impairment does not prevent the claimant from engaging in other substantial gainful employment." *Id.* at 659–60 (citing, *inter alia*, § 404.1520(g)(1)).

traumatic stress disorder, anxiety, and depression, all of which have required varying levels of residential and out-patient treatment. When she has complied with treatment protocols, including medication regimens, she has reported positive outcomes.

Six witnesses submitted evidence relating to Turner's mental impairments and her request for benefits: four state agency psychologists and her two treating psychologists. The state psychologists evaluated Turner's record as a part of her application.[3] All four of them agreed that Turner would be "[m]oderately limited" in her "sustained concentration and persistence capacities and/or limitations," but would be able to work an eight-hour day and "complete a normal workweek," "maintain[ing] attendance and punctuality with only 1-2 problems per month due to depression." J.A. 118 ("[Turner] has the ability to perform 1-3 step tasks independently, but may demonstrate poorer performance on detailed or complex tasks. [She] could attend/concentrate for 2hr periods in order to complete an 8hr workday. [She] would be able to maintain attendance and punctuality with only 1-2 problems per month due to depression. [She] would be able to complete a normal workweek and to perform at a generally consistent pace with others, with only minimal need for accommodations on an infrequent basis. This limits [her] to unskilled work."); *accord* J.A. 85, 104, 133.

---

[3] Four state psychologists ultimately opined on Turner's medical records because she successfully appealed the initial denial of benefits within the agency's review process. The upshot is that her medical records underwent the initial assessment and review process two separate times. The reason for that second review is unrelated to the issue on appeal.

4

Turner's treating psychologists opined that her mental impairments would limit her work performance.[4] For example, Dr. Weekes explained that Turner "reports significant cognitive impairments that create[] challenges in accomplishing tasks," that she "is often triggered in work-like settings," and that her anxiety and depression have "limit[ed] her ability to interact positively with others and form trusting relationships." J.A. 9730. On the issue of absences, Dr. Weekes indicated that Turner's medical impairments would cause her to be absent from work "[m]ore than three times a month." J.A. 9727. In turn, Dr. Carlin recounted the symptoms of PTSD and depression that Turner reported having and noted that she had "personally observed" Turner's "concentration difficulties and anxiety related to avoidance of day to day tasks." J.A. 339. In addition, Dr. Carlin expressed her view that Turner would not "be able to return to her current, comparable or any position without impairment for at least twelve (12) months from the date of this letter." J.A. 339.

In assessing Turner's RFC, the ALJ concluded that Turner could "perform light work as defined in 20 CFR [§] 404.1567(b) except [certain physical limitations not at issue here and that she was] able to perform simple, routine tasks; can perform work not requiring interaction with the public; [and] is able to adapt to simple changes in a routine work setting." J.A. 10800. In reaching that conclusion, the ALJ recounted Turner's

---

[4] Dr. Jennifer Weekes, Ph.D., is a licensed clinical social worker who had worked with Turner from 2014 to May 2015 and then saw her again eighteen times over the course of 2018.

Dr. Elizabeth Carlin, a licensed clinical psychologist, began working with Turner in March 2019 and into 2020. (Although the letter Dr. Carlin submitted in support of Turner's application for disability benefits was dated July 2018, the year appears to be a typographical error.)

5

representations regarding her medical impairments, which included difficulty in "her ability to remember, complete tasks, concentrate, understand, follow instructions, and get along with others" and "struggl[ing] with stress and changes in routine." J.A. 10800. The ALJ found Turner's mental impairments "d[id] not support debilitating mental health symptoms," given her "generally conservative treatment with a documented positive response." J.A. 10802–03. He further concluded that Turner's testimony was "not entirely consistent with the medical evidence and other evidence." J.A. 10801. He then recounted in some detail Turner's extensive medical record documenting her history of mental impairments, concluding that it demonstrated the need for some mental limitations, but did "not support the extent of mental limitations as alleged." J.A. 10803. The ALJ also noted that Turner's "own statements during the period at issue" showed that she was "ready, willing, and able to work" full time, she was "able to take care of her activities of daily living and was actively looking for employment," and had in fact engaged in "significant work consistently above substantial gainful activity levels beginning March 6, 2019." J.A. 10804. The ALJ acknowledged Turner's past hospitalizations for mental-health treatment, but concluded that those acute periods did not "accurately reflect [her] baseline level of mental functioning" and that records showed that she had "improved" and "responded well to treatment." J.A. 10803.

As for the six psychologists' views, the ALJ found the four state psychologists' opinions "partially persuasive," crediting them insofar as they opined on Turner's "ability to concentrate, persist, and maintain pace" (assessments that are not at issue in this appeal), but concluding that the record supported no further limitations in social interaction and

6

adaptation because those areas could be adequately "accommodated by limitations to only simple, routine tasks, no interaction with the public, and simple changes in a routine work setting." J.A. 10805–06. The ALJ found Turner's psychologists' opinions "not persuasive" and "vague and undefined," specifically rejecting their views that Turner would be absent three or more times a month or unable to work at all. J.A. 10806. As support, the ALJ pointed to Turner's record evidence, which demonstrated "numerous unremarkable mental status examination findings" as well as Turner's "significant work consistently above substantial gainful activity levels beginning March 6, 2019" as well as her job searching, J.A. 10804, which demonstrated "she was able to engage in work-related functioning," J.A. 10806.[5] After undertaking the rest of the five-step process, the ALJ denied benefits.

Turner's administrative appeal of the ALJ's decision was dismissed. In relevant part, the Administrative Appeals Judge rejected Turner's argument that the ALJ erroneously omitted a limitation of one to two absences per month or should have explained the reason for that omission. In so doing, he rejected her characterization of the state agency psychologists' opinions, noting that none of them "indicate[d] absences would occur at [the rate of 1-2 times per month], and [they had] additionally clarif[ied] that [Turner] was able to complete a normal workweek and to perform at a generally consistent pace with others, with only minimal need for work absence on an infrequent basis." J.A. 10779. As such, he concluded the ALJ had not been required to say anything further on the matter, but had properly understood and analyzed "the record and provided supporting rationale for finding

---

[5] Turner does not challenge the different weights or conclusions about persuasiveness that the ALJ gave each witness' view.

[the state agency psychologists] partially persuasive." J.A. 10779. He also observed that the ALJ appropriately rejected Turner's witnesses on the issue of absenteeism given that the opinion that Turner would consistently miss work was "not fully consistent with or supported by the medical evidence of record including unremarkable mental status examination findings . . . except for during a brief, acute period of symptoms in 2018." J.A. 10779.

### B.

Turner challenged the Social Security Administration's denial of benefits in the U.S. District Court for the Eastern District of Virginia. The Commissioner moved for summary judgment based on the administrative record.

The magistrate judge recommended affirming the denial of benefits.[6] He first concluded that the ALJ had built "a sufficient logical bridge" between its consideration of the psychological opinions and its omission of an absenteeism limitation in the RFC. J.A. 11649. To support this conclusion, the magistrate judge observed that the ALJ was not required to include those limitations even though it found the state psychologists' opinions persuasive. [J.A. 11649, 11651.] In addition, he noted that the ALJ *had* addressed absenteeism as part of its assessment of functionality, though it had done so in the discussion of why it rejected the opinions of Turner's witnesses. [J.A. 11649–50.] The magistrate judge next observed that the "ALJ's decision provides ample justification for

---

[6] District courts can designate a magistrate judge to submit proposed findings of fact and recommendations for the disposition of motions for summary judgment, which the district court considers before entering a final order. 28 U.S.C. § 636(b)(1).

not including any additional mental health limitations, including limitations on absenteeism." J.A. 11650. For example, he noted that an RFC is supposed to be the "maximum degree to which" an individual can perform, J.A. 11651, and that the record showed Turner had been employed throughout the period of her claimed disability without accruing any record of absenteeism that would need to be accommodated.

Turner noted objections, which the district court considered and rejected in a decision adopting the magistrate judge's report and recommendation and granting summary judgment to the Commissioner. In particular, the district court agreed that the ALJ "*did* consider—and reject—the notion that [Turner] would miss several days of work per month" and that was the reason the ALJ did not include an absenteeism limitation. J.A. 11668. The court concluded that the decision did not reflect that the ALJ "ignore[d] without explanation one of [Turner's] alleged limitations." J.A. 11668–69. The district court also rejected Turner's assertion that the ALJ's explanation was inadequate, observing that this Court has rejected a "bright-line rule that an ALJ's failure to explain every single point on which it agrees or disagrees with an expert requires a remand." J.A. 11669. Moreover, it concluded that the ALJ's treatment of the issue of absenteeism "leaves no ambiguity on the issue of whether" Turner would be limited by absenteeism. J.A. 11669.

Turner noted a timely appeal, and this Court has jurisdiction under 28 U.S.C. § 1291. *See* 42 U.S.C. § 405(g).

9

II.

A.

The Court reviews a disability-benefits "decision only to determine if it is supported by substantial evidence and conforms to applicable and valid regulations." *Patterson*, 846 F.3d at 658. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341, 353 (4th Cir. 2023) (citation omitted). Substantial evidence is "more than a mere scintilla of evidence but may be less than a preponderance." *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015) (citation omitted). When using this highly deferential standard of review, the Court does "not reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." *Shelley C.*, 61 F.4th at 353 (cleaned up).

All that said, for the Court to be able to undertake its review, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013). In other words, "the ALJ must build an accurate and logical bridge from the evidence to his conclusion." *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 269 (4th Cir. 2017) (citation omitted).

B.

Turner challenges the district court's assessment of her RFC, a calculation which is meant to reflect "the most [a claimant] can still do despite [his or her] physical and mental limitations." *Id.* at 254 (cleaned up); *see also* SSR 96-8p, 61 Fed. Reg. 34,474, 34,475 (July 2, 1996) ("Ordinarily, RFC is the individual's *maximum* remaining ability to do sustained

10

work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." (emphasis added)). When undertaking the RFC assessment, the ALJ must consider all "physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [her] ability to work." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (citation omitted). This requires the ALJ to "provide a narrative discussion describing how the evidence supports each conclusion," *id.* (cleaned up), before "mak[ing] a finding as to the claimant's RFC," *id*. Put another way, the ALJ's discussion should contain "three components: (1) evidence, (2) logical explanation, and (3) conclusion." *Id.*; *see also Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021) (discussing the required assessment). That said, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in [its] decision." *Thomas*, 916 F.3d at 312 (citation omitted).

In this case, the ALJ adequately performed this role and substantial evidence supports the omission of a limitation relating to absenteeism. As recounted above, the ALJ's decision reflects all three required components. First, he walked through Turner's statements about her limitations, her medical record, and the opinions of the six witnesses about how they believed her mental impairments impacted her ability to work. Then, he explained why he found some limitations appropriate and why he rejected other limitations. In addition, he discussed why he credited some of the opinions over others, for the most part basing that decision on the extent to which the opinions found support in the medical

11

record and Turner's work history. In making these determinations, the ALJ acted well within the scope of his responsibilities and those decisions are supported by substantial evidence in the record. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) ("In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute or judgment for that of the ALJ." (cleaned up)).

At the outset, we note that Turner repeatedly overstates what the four state agency psychologists actually said. None of them opined that she "would have issues with regular work attendance" and "be absent from work one to two times per month due to her mental impairments." Opening Br. 15; *see also* Opening Br. 21 ("All four state agency psychologists agreed that Ms. Turner would miss one to two days per month due to her mental health ailments."). Instead, each indicated that she would "[b]e able to maintain attendance and punctuality with only 1-2 problems per month" and none elaborated what those "problems" would be or whether, in their view, they would require specific accommodation. J.A. 85, 104; *accord* J.A. 118, 133. They each also concluded that Turner would be able to "complete a normal work week and . . . perform at a generally consistent pace with others, with only minimal need for accommodations on an infrequent basis." J.A. 85, 104; *accord* J.A. 118, 133. The ALJ's articulation of Turner's RFC is thus consistent with state psychologists' views when considered as a whole.

Even accepting that the state psychologists had recognized that Turner may have "infrequent" attendance or punctuality issues does not mean that the ALJ was required to include an absenteeism limitation just because he found that they were "persuasive" witnesses. Calculating a claimant's RFC is the Commissioner's responsibility and

12

prerogative, so long as it accurately reflects the record evidence. 20 C.F.R. §§ 404.1546(c).

Moreover, ALJs are not required to accept all components of a witness' discussion about a

claimant's limitations just because the ALJ finds them to be generally persuasive. *Thomas*,

916 F.3d at 312 (reiterating that "there is no rigid requirement that the ALJ specifically

refer to every piece of evidence in [his] decision" (citation omitted)). In sum, the ALJ did

not misapprehend the governing legal standards or misapply them when rendering its

decision.

Nor was the ALJ required to say any more to support its decision not to include a

limitation relating to absenteeism. As the Administrative Appeals Judge, magistrate judge,

and district court have all correctly observed, the ALJ in fact considered and rejected an

absenteeism limitation because it did not believe that the record supported one. That the

ALJ did not discuss every possible permutation of the evidence on point or potential

limitations in this regard does not render the decision fatally deficient. This case does not

present a situation where the ALJ just ignored a claimant's principal argument or

significant evidence when assessing her RFC. To the contrary, the ALJ grappled with the

evidence and explained its RFC assessment. Because the ALJ's decision reflects careful

consideration of the record evidence and provides reasons connecting that evidence to the

conclusions it reached about Turner's RFC, the judiciary has everything it needs to

undertake its review of that decision for substantial evidence. *See Shinaberry v. Saul*, 952

F.3d 113, 122 (4th Cir. 2020) (rejecting an argument that the ALJ failed to sufficiently

explain its RFC assessment where it addressed the impairments, set out limitations, and

explained why the evidence supported those limitations but not others); *see also Monroe*

13

*v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) ("We have held that a necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling, including a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." (cleaned up)); *Mascio v. Colvin*, 780 F.3d 632, 636, 637 (observing that "remand may be appropriate [when] inadequacies in the ALJ's analysis frustrate meaningful review" such as when the Court is "left to guess about how the ALJ arrived at his conclusions on [the claimant's] ability to perform relevant functions" (cleaned up)).

## III.

In short, the ALJ's decision reflects a recitation of the evidence and it built a logical bridge between that evidence and its assessment of Turner's functionality. Because the ALJ's decision allows for meaningful review and substantial evidence supports the ALJ's denial of benefits in this case, the district court did not err in granting the Commissioner's motion for summary judgment. Therefore, we affirm its judgment. Further, we dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this Court and argument would not aid the decisional process.

*AFFIRMED*

14